# Chicago & Eastern Illinois Railroad Company v. John A. Crose.

### Gen. No. 4,223.

1. PHOTOGRAPHS—*when, competent.* Photographs, notwithstanding they may have been taken a year after the occurrence of the transaction which they are offered partially to represent, may be competent to show the surroundings, etc., where they are properly substantiated.

2. EXPERIMENTS—*what essential to competency of.* In order to permit the introduction of evidence as to the results of experiments, it must appear that they were made under substantially the same conditions as existed at the time of the transaction in question.

3. IMPEACHMENT—*when signed statement of witness is competent by way of.* Where a witness does not directly deny having made statements contained in a writing, yet such instrument should be admitted as evidence tending to impeach him where it contains statements in conflict with those made upon the stand, and he admits that the signature thereto is his and that it had been read to him before he signed it.

4. IMPEACHMENT—*when error in excluding evidence offered for the purpose of, is harmless.* Where a written statement signed by a witness and which tends to impeach him, is improperly excluded, such error is harmless where verbal evidence offered for a like purpose, based upon the statements contained in such writing, are admitted.

5.. PROHIBITED SPEED—*when running of train at, will sustain cause of action.* In order to recover for injuries to personal property resulting from the running of a train through municipal limits at a rate prohibited by its ordinances, it must appear that the injury was the proximate result of the violation of such ordinance. Held, in this case, that a particular instruction set out in the opinion *in haec verba* satisfies this rule of law and was a good instruction.

6. PRESUMPTION OF NEGLIGENCE—*when instruction pertaining to, is improper.* An instruction which substantially tells the jury that upon a certain showing a presumption of negligence exists, is misleading, where it does not, likewise, instruct the jury that such presumption is rebuttable; but where the jury is so told in other given instructions the erroneous omission is cured.

7. INSTRUCTIONS—*how to be regarded.* It is the duty of a reviewing tribunal to consider the instructions as a series, and, unless they are so variant and irreconcilable as to be unable to stand together and leave the jury free to adopt one or more as the law and entirely reject the other as might suit their caprice, they are not so conflicting as for that reason to constitute error sufficient to reverse a judgment.

Action on the case for injury to personal property. Appeal from the Circuit Court of Iroquois County; the Hon. ROBERT W. HILSCHER,

Judge, presiding.  Heard in this court at the April term, 1903.  Affirmed.  Opinion filed April 14, 1904.

FREEMAN P. MORRIS and FRANK L. HOOPER, for appellant; W. H. LYFORD and E. H. SENEFF, of counsel.

DYER & WALLBRIDGE, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

This was a suit to recover the value of a span of horses killed, and for an injury to a span of mules, wagons and harness, by the appellant company, February 4, 1901, at Milford, a station upon appellant's line of road in Iroquois county, in this state.  Appellee, who was the owner of the property in question, was engaged with his son and two other men in hauling wood to Milford, to load in box cars for shipment over appellant's road.  The cars in which the wood was being loaded stood on the side track, parallel to the main tracks which ran north and south.  In order to reach the cars for the purpose of unloading the wood from the wagons, it was necessary to drive the teams in and leave the wagons between the main and side tracks.  All four of the teams were between these tracks, where the drivers were unloading or about to unload the wood from the wagons, when a belated passenger train which did not stop at that station approached at a high rate of speed.  The teams or some of them became frightened.  Frank Hevron, the driver of one of the teams which appears to have been most frightened at the train, attempted to control it by taking hold of the bits.  In its fright this team swung to the west toward the main track and was struck by the passing train, and both it and the driver were instantly killed, the wagon and harness destroyed or injured and also a span of mules that had been driven in by appellee was injured by being struck by the wagon that collided with the train.  Appellee recovered a verdict and judgment against appellant for $350 from which this appeal is prosecuted.

Milford, at the time of the accident, was an incorporated

village and had in force an ordinance prohibiting the running of trains within the corporate limits in excess of ten miles an hour.    According to the testimony of the engineer in charge of the engine, who testified on behalf of appellant, the train was running at about thirty or thirty-five miles per hour; and according to the testimony of witnesses who testified on behalf of appellee, it was running at a rate of fifty or more miles per hour.    Whatever may have been the exact rate of speed, there is no dispute that it was running at a rate greatly in excess of that allowed by the ordinance.

The south car of those in which appellant was to load his wood, was standing just north of Ashford street and well toward the south end of the switch where it connected with the main track.    To reach this place the teams came from the west on Lyle street, which is the next street north of Ashford, and after passing over the main tracks, turned south between the main and side tracks and drove down to where the cars were standing.    According to a plat and measurements made by appellant the distance between the east rail of the east main or north-bound track and the west rail of the side track at the south line of Lyle street, is twenty feet.    Two hundred and sixty feet further south the distance is fifteen feet and three inches, and according to appellee's testimony the accident occurred somewhere between these points.    He testified that his impression was the accident occurred something like 160 or 170 feet south of Lyle street.    It will be seen from these measurements that going south from Lyle street the side track curved west toward the main track, and according to the plat of appellant, connected with it a little south of the south line of Ashford street.    The main tracks of appellant ran in a straight line, practically due north and south through Milford and as far south as a bridge about a half mile south of Lyle street, and perhaps farther.    Appellee claims that from the position he and his employees in charge of his teams occupied, the view of appellant's track south was obstructed by the cars on the side track which curved

to the west. Lyons' team was farthest south and was at or about the south car on the side track; appellee's son was behind him, and Hevron was still north of appellee's son, appellee being north of Hevron. The testimony on behalf of appellee is to the effect that the first knowledge the parties driving the teams had of the approach of the train, was seeing the smoke over the top of the car farthest south on the switch, and that it was so near to them it was impossible for them to unhitch their teams or get out of the way, and further that no bell was rung or whistle sounded as the train approached the station of Milford. Appellant's contention is that the view of its main tracks from the position where appellee's teams and men were, south one-half mile to the bridge, was clear and unobstructed and that a train could be seen from the time it reached the bridge, by looking in that direction, and also that the whistle was sounded and the bell rung. In addition to other proofs made by appellant as to the view of the main track south being unobstructed, it offered as evidence three photographs which on objection by appellee's counsel were not allowed to go to the jury, and appellant insists that this was error. These photographs were taken on the seventh day of February, 1902, a little more than one year after the accident. When the one marked Exhibit "D" was taken, the camera was standing about the north line of Lyle street, and midway between the east rail of the north-bound main track and the west rail of the side track and facing south. When the one marked Exhibit "E" was taken, the camera stood astride the west rail of the side track, near the south side of Ashford street, and six or eight feet east of the east rail of the main track, and faced north. When the one marked Exhibit "F" was taken, the camera stood about the center of the space between the east rail of the north-bound main track and the west rail of the side track, at a point about 160 feet south of the south line of Lyle street, and faced south. The photographer testified that the photographs were correct representations and views of the tracks of appellant and their surroundings at

the time they were taken, as did also Mr. Lewis, appellant's station agent at Milford. Mr. Lewis also testified that the cars standing on the side track at the time the photographs were taken, were at the same places, were the same in number, and of the same kind and size as those on the track at the time of the accident, except one furniture car, which was larger than an ordinary box car, and that there were no other objects on or about the tracks at the time when the accident happened, different from those at the time the photographs were taken, except as to the size of the one car. He says he did not make any measurements as to locations of the cars on the side track after the accident and before the cars had been moved, but that he examined them and placed the cars for the photographs substantially as they were when the accident occurred. The testimony of witness Jeffreys tended to corroborate these statements of Mr. Lewis, as did also the witnesses Laird and Raines.

While two of these photographs may not have been taken from positions where they would accurately show the view south from where appellee and his men and teams were at the time of the injury, still we are of opinion that under the proof the court might well have admitted all of them. The purpose of these photographs was to sustain appellant's contention that the view of the track from the direction the train was approaching was unobstructed as far as the bridge, substantially a half-mile south of the place where the accident occurred. Appellant had the benefit of the testimony of a number of witnesses who testified that such was the fact. The photographs, if they sustained appellant's position, would only have been additional evidence on that branch of the case, but it is argued that as the photographs could not be mistaken as to conditions and the view, it was material to appellant that they be received as evidence, and that their rejection was prejudicial error. In our view of the case if it be conceded that the photographs were competent, the refusal to admit them was not such prejudicial error as to require a reversal of the case. Whether the approaching train could be seen a half-

mile away is only important as bearing on the question whether appellee and his men were in the exercise of due care and caution, and whether the failure to observe a train immediately upon its coming in view a half-mile away was such contributory negligence as would bar a recovery. The engineer in charge of the engine testified he was running thirty or thirty-five miles per hour. Other witnesses placed its speed as high as fifty miles per hour, but if it was running at the lowest rate mentioned by the engineer, it would have traversed the half mile in one minute or a little less, and it is apparent that this short period would have been inadequate to have allowed the men and teams time to have removed to a place of safety. Appellant, when it placed the cars as it did, invited appellee to go to them and unload his wood in them. He had no choice about it, and could not select the location the cars should be placed in. There were but two ways to get the teams out of danger of the approaching train. One was to go south beyond the cars and turn east over the side track, and the other to turn west and cross over the main tracks at a place where there was no crossing. It is evident that it would have been impossible for Hevron's team to have reached a place of safety by either route in the short space of time occupied by the train in running the distance between the bridge and the place of injury, and for these reasons we are of opinion the court's refusal to admit the photographs was not reversible error.

On the trial appellant offered to prove the results of certain experiments made by parties for the purpose of determining how far south the main track of appellant could be seen by a person standing midway between the main and side tracks, at the point near where the accident occurred and looking south. It does not appear that any car or cars were on the side track at the time, but some of the parties held a board up, about opposite where it was claimed the south car was situated on the day of the accident, and on the south side of the person making the observation. It was claimed the board was held two and one-half feet

west of the west rail of the side track, which would correspond with the distance a car would project over the rail in that direction. The court sustained objections to this class of testimony, and we think properly so. To permit proof of the results of experiments, it must appear that they were made under substantially the same conditions that existed at the time the transaction being investigated occurred, and we are of opinion that these requirements were not met by the use of the board, (how wide and high is not stated,) instead of cars on the track, as the proof shows they were when this accident occurred. The court did permit certain witnesses, who claimed to be familiar with the situation and location at the time of the accident, to testify how far the track could be seen south, by a person standing between the main and side tracks north of where the accident occurred, under the conditions that existed at the time of the accident.

On the trial appellee claimed and his proof tended to show, that he and the men driving the other teams, had just driven up to the cars on the side track when the train came along. Appellant offered proof tending to show that a portion of the wood from some of the wagons had been unloaded, and placed in the car before the train came. Lyons, who was in charge of the team furthest south, testified that he did not think any of the wood had been unloaded before the train came. On cross-examination he was shown a paper which purported to be a statement of the circumstances of the accident signed by him on February 7, 1901, and stated that the signature to it was his, and that Esquire Cleaver wrote it out for and read it over to him. He was further asked if a certain question was not asked him while before Esquire Cleaver, requesting him to state fully all about how the accident occurred and the question contained in the paper was read to him, to which he replied he did not remember, referring to the statement handed to him by counsel. Counsel then put the following question: "Let me ask if on that occasion in answer to that question you did not make this statement contained

in this paper: 'Can't say just how the accident occurred but do know that the injured person was unloading wood from a wagon into a car standing on the east switch. I had charge of one of the teams hauling wood and as soon as I saw the train approaching, went to the head of my horses so as to hold them, and was so engaged at time of accident.' Did you make that statement and what is contained in this statement?" The witness answered substantially that he did not know, that Cleaver asked him the questions and he gave the information from which Cleaver wrote the answers, that it was then read over to him and he signed it. Appellant offered this statement in evidence but on objection of appellee it was not permitted to be introduced or read to the jury. This we think was erroneous. While the witness had not directly denied that he made the statement, he admitted the signature to it was his, that it had been read over to him before his signature was attached, but that he did not know whether he made that answer or not. Under these circumstances we think the paper should have been admitted, but we think also this error was cured by the testimony of Cleaver later in the trial. He was placed on the stand by appellant, and upon being shown the paper exhibited to the witness Lyons, testified that the handwriting in the body of it was his, and that he prepared it at the request or direction of Lyons. He was then asked by counsel for appellant, " Now you may state whether or not at your office in Milford, on February 7, 1901, you asked Mr. Lyons this question from the paper: 'State fully how the accident occurred and what the injured person was doing when it happened. Where were you at the time of the accident, and what were you doing?'" handing paper to the witness, who answered, " I asked Mr. Lyons the questions just as they are here." " Q. Then did you ask him that question number ten? A. Yes, sir, that question in connection with the balance of them. Q. Now you may state whether or not at that time and place indicated Mr. Lyons gave you the following answer: 'Can't say just how the accident occurred

but do know that the injured party was unloading wood from a wagon into a car standing on the east switch. I had charge of one of the teams hauling wood, and as soon as I saw the train approaching went to the head of my horses so as to hold them, and was so engaged at the time of the accident.' Now you may look at that reply and state whether Mr. Lyons made that statement to you there?" To which the witness replied that he did.

To our minds appellant could not have received any greater benefit from the introduction of the paper itself. The witness Lyons having admitted the signature to the paper to be his, and the question and answer sought to be introduced to the jury having been read from the paper in their presence in connection with the testimony of the witness Cleaver, we are unable to see how appellant was prejudiced because the paper itself was not admitted.

It is seriously contended and ably argued that the court erred in giving instructions numbered two and four. They are as follows:

2. "The court instructs the jury that it is negligence on the part of a railroad company to run its trains through a city, incorporated town or village, at a rate of speed prohibited by law; and if a railroad company does so run its trains and thereby injures or destroys the property of a person who is himself in the exercise of reasonable care and caution to avoid injury to such property, the company will be liable."

4. "The jury are further instructed that by the laws of this state, if a railroad company by its agents or servants runs an engine or train of cars in or through the limits of any incorporated city, town or village, at a greater rate of speed than is permitted by the ordinance of such city, town or village, then the company is liable for all damages done to the property of any person injured by such engine or train of cars, providing the person injured is exercising due care for his property at the time in question."

Among other negligent acts charged in the declaration as causing appellee's injury, was the running of appellant's train through the incorporated village of Milford, at a rate of speed prohibited by the ordinance. The point made on

these instructions, is that they tell the jury if the train was running at a prohibited rate of speed at the time of the injury, and if appellee was in the exercise of reasonable care and caution to avoid injury to his property, appellant would be liable whether the speed of the train was the proximate cause of the injury or not. While the statute of this state relating to the fencing and operating of railroads provides that "Whenever any railroad corporation shall by itself or agents, run any train, locomotive engine, or car, at a greater rate of speed in or through the incorporated limits of any city, town or village, than is permitted by any ordinance of such city, town or village, such corporation shall be liable to the person aggrieved for all damages done to the person or property by such train, locomotive engine or car, and the same shall be presumed to have been done by the negligence of said corporation or their agents," still this presumption is not conclusive, and before recovery can be had on that account, it must appear that the speed of the train was the proximate cause of the injury. The first instruction above quoted tells the jury that it is negligence on the part of the railroad company to run a train through an incorporated city or village at a rate of speed prohibited by law, and that if it "does so run its trains and *thereby* injures or destroys the property of a person who is himself in the exercise of reasonable care and caution to avoid injury to such property, the company will be liable." We are of opinion the use of the word "thereby" in this instruction relieves it of the objection made, and that the meaning of this instruction is, and it would be so understood by the jury, that if the injury was a consequence of the unlawful rate of speed then there would be a liability. Both Webster's and the Century dictionary define "thereby" to mean "By that; by that means; in consequence of that." The Standard dictionary defines the meaning to be "Through the agency or in consequence of that."

The fourth instruction is justly subject to criticism, and unless cured by other instructions given would be likely to be misleading. It is substantially the language of the stat-

ute, omitting the clause that the injury will be presumed to have been done through the negligence of the railroad company. In A. T. & S. F. R. R. Co. v. Feehan, 47 Ill. App. 66, opinion by Mr. Justice Cartwright, it was held, the fact being proven that the train was running at a prohibited rate of speed at the time of the injury, the presumption is created by virtue of the statute that the injury was committed by the negligence of the defendant; this presumption is not conclusive, but it devolves upon the defendant to rebut it. The judgment of the Appellate Court was affirmed in 149 Ill. 202. This precise point was not discussed by the Supreme Court in its opinion, but it is fair to assume that that court did not disagree with the Appellate Court as to the law of this question.

Appellee had a right to have an instruction given in the language of the statute, and we take it such an instruction would not have been required to state that the presumption created by the statute, that the injury was done by the negligence of the railroad company was not conclusive, but was subject to be rebutted by proof. In C. B. & Q. R. R. Co. v. Haggerty, 67 Ill. 113, the action was for damages for killing a cow of plaintiff in the village of Camp Point, and it was charged that the train which caused the injury was running at a rate of speed prohibited by the ordinance. An instruction was given for plaintiff, stating that if this was proven " then said defendant is presumed to be guilty of negligence in killing the cow of plaintiff." It was insisted by the defendant that this instruction was misleading, and that the jury would understand from it that this presumption of negligence was conclusive. The court say : " The instruction is no doubt somewhat open to the objection made, that it might be understood by the jury that the presumption of negligence, where the killing of the animal took place under the circumstances stated, was conclusive and not subject to be rebutted by proof of the actual facts to the contrary. Still, the instruction in this respect was given in the language of the statute, and we could hardly pronounce to be error the laying down the law in the words of the law itself."

At the request of appellant the court gave to the jury the following instruction :

" The court instructs the jury that although the law presumes that where a train is running at a rate of speed in excess of that fixed by the ordinance of a village, and property is struck and injured by the train, that the injury was the result of negligence on the part of the railroad company, yet such presumption of negligence may be rebutted by the evidence; and in this case, if you believe from the evidence that the injury in question was not caused by reason of the north-bound train running at a rate of speed in violation of the ordinance of the village of Milford, but that it was caused by the defendant's horses becoming frightened at the train, and that the horses were not frightened by reason of the speed of the train, but because they were afraid of a locomotive, then you are instructed that the plaintiff cannot recover upon the ground alone that the train was running at a greater rate of speed than that fixed by the ordinance of the village of Milford."

This instruction fully and correctly stated the law on this subject, and supplied the omission from appellee's instruction. It is insisted that appellee's instruction is a positive statement that a railroad company is liable for all damage done by its trains while running through an incorporated city or village at a prohibited rate of speed if the injured party was exercising reasonable care and caution, and is irreconcilable with, and could not be cured by appellant's instruction above quoted. In the Haggerty case, *supra*, the Supreme Court say immediately following the quotation we have above given : " Had defendant's counsel been apprehensive that the jury might be misled by the instruction as to the character of the presumption, he might have asked, on his part, an explanatory instruction to the effect that the presumption was not a conclusive but only a *prima facie* one. And such, in effect, may be considered the fourth instruction which was given on behalf of the defendant." That instruction was to the effect that if plaintiff's cow was on the track she was wrongfully there, and if the jury believed from the evidence that she was injured without the fault of the defendant and while its

employees in charge of the train were exercising proper care and diligence to avoid injury, then it would not be liable. If the instruction complained of in that case could be cured by the one given, it appears to us that there is equally as strong or stronger ground for holding that appellee's fourth instruction in this case was cured by the one we have quoted given for appellant. By it the jury were told in plain and explicit terms that while the law presumes an injury inflicted by a train running at a prohibited rate of speed was the result of negligence of the company, still such presumption is subject to be rebutted by proof, and that if the jury believe that appellee's injury was not caused by the train running at a rate of speed prohibited by the ordinance but was caused by the horses becoming frightened at the train because they were afraid of the locomotive and not because of its speed, then no recovery could be had on the ground that the train was running at a prohibited rate of speed.

In I. C. R. R. Co. v. Ashline, 171 Ill. 313, an instruction was given for plaintiff telling the jury that running a train at a prohibited rate of speed within the city limits " would be negligence in and of itself." The giving of this instruction was assigned for error in the Supreme Court, and that court said : " The writer of the instruction no doubt supposed that it was authorized by the foregoing section of the statute. It is, however, manifest that the instruction goes somewhat further than the statute. Under the statute, negligence is presumed from a violation of its provisions, while under the instruction the running of trains at a rate of speed in violation of the ordinance is of itself negligence. We think the instruction was erroneous, but the error was so slight we do not think the jury could have been misled, and if they were not misled the error was harmless." In that case no other instruction appears to have been given upon this question.

As we have before stated the instruction here complained of, was substantially in the language of the statute with the exception of the omitted clause as to the presumption of neg-

ligence. We concede if appellant's position that the law as laid down in this instruction of appellee and in its instruction above quoted, is so conflicting as to be irreconcilable and was likely to be so understood by the jury, then a reversal of the judgment in this case would be necessary. The instruction being substantially in the language of the statute, it cannot be said that it does not contain a correct proposition of law, but it is open to the criticism that it does not contain a full and complete statement of the proposition, and in the absence of any other instruction fully covering the ground, would be likely to be misleading. Our Supreme Court has repeatedly held that in determining whether the jury has been correctly instructed in a given case, it is the duty of the court to consider the instructions as a series, and unless they are so variant and irreconcilable as to be unable to stand together, and leave the jury free to adopt one or more as the law and entirely reject the other, as might suit their caprice, they are not so conflicting as for that reason to constitute error sufficient to reverse a judgment. Baker v. Baker, 202 Ill. 595; Fessenden v. Doane, 188 Ill. 228; Henry v. The People, 198 Ill. 162; Catholic Order of Foresters v. Fitz, 181 Ill. 206. It has also been repeatedly held by our Supreme Court that an instruction which omits some necessary element is not reversible error, if other instructions in the series embody the missing element so that as a series the instructions present the law correctly to the jury. In Day v. Porter, 161 Ill. 235, speaking of this subject the court say : " Complaint is made that in some instructions given at the request of plaintiff, there was an omission; but if so it was fully met by the second instruction given on behalf of defendant. * * * There is no just ground for complaint on account of the rules of law given to the jury in the instruction." In Toluca M. & N. Ry. Co. v. Haws, 194 Ill. 92, the Supreme Court say : " Where one instruction may omit some needed qualification and appear to be misleading when severed from its connection with the other instructions, it may not be misleading or incorrect when read with

the others.  .If the instructions, taken as a whole, present the law to the jury with substantial correctness it is sufficient."   In Catholic Order of Foresters v. Fitz, 181 Ill. 206, it is said :   " And while a single instruction may omit matters of defense in such a manner as to mislead the jury and be reversible error, yet on a careful examination of the instructions in this case we do not find that the jury could have been misled by the series of instructions, or that there was such omission of matters of defense in any one instruction as might  have misled the jury  or  caused  confusion." In C. & A. R. R. Co. v. Pontiac, 169 Ill. 155, in discussing an instruction given for plaintiff which defendant claimed to be erroneous, the court say :   " This defect, if it be a defect, was cured by the character of the instructions which were given for the appellant, as will more fully appear when we come to the consideration of .the latter instructions. The instructions given for the plaintiff, and those given for defendant, are to be considered together as one charge." In City of Lanark v. Dougherty, 153 Ill. 163, which was a suit to recover of the city, damages that plaintiff claimed to have sustained as a result of stepping into a hole in the sidewalk, plaintiff recovered, and the city appealed.   One of the grounds urged for a reversal was that the first instruction given for plaintiff omitted to inform the jury that in order to make the defendant liable it should have had notice of the defect.   The court say :   " Even if the instruction was faulty in not submitting to the jury the question whether the defect was of such a nature as to put a reasonably prudent man upon inquiry to examine and see if the repair of the sidewalk was necessary to make it reasonably safe, that question was fully and fairly submitted in an instruction given for the defendant.   The instructions must all be considered together and as one charge."   In I. C. R. R. Co. v. Cozby, 174 Ill. 109, it is said :   "We think the instruction is subject to just criticism in that the language ' in manner and form as charged in the declaration' might reasonably have been understood by the jury as simply referring to the manner of inflicting the injury

and causing the death, that is, by being caught between the rails and run over by the cars. But in view of the rule laid down in the defendant's instructions in plain and express language, the jury could not have been misled by the error complained of." In Wenona Coal Company v. Holmquist, 152 Ill. 581, it was said: "The first instruction is objected to upon the ground that it does not require the exercise of ordinary care by the plaintiff. This is true, if the instruction is considered by itself, but all the instructions, both those given for the plaintiff and those given for the defendant, must be considered together as one charge. Upon examining the instructions given for the defendant we find that five of them distinctly and in express terms, say to the jury that the plaintiff cannot recover unless he shows that at the time of the injury he was in the exercise of ordinary care." A case which seems to us much in point is C., C., C. & St. L. Ry. Co. v. Monaghan, 140 Ill. 474. That was an action brought by plaintiff as administrator, for damages for the death of Monaghan, who, the declaration charged, was killed by a freight train of the defendant at a public highway crossing. The declaration charged that the view of the approaching train was obstructed by freight cars at and near the crossing, that the train was running at an unusual rate of speed, and that no bell was rung or whistle sounded and kept ringing or sounding for eighty rods from the crossing. The court say: "The third instruction given for the plaintiff is complained of as being erroneous upon the alleged ground that it held the mere failure to ring a bell or sound a whistle to be such negligence as made the defendant liable, without at the same time requiring the jury to find that the negligence in question contributed to the happening of the accident. * * * If the instruction was erroneous in the respect thus indicated, it could not have done the defendant any harm in view of its explanation and qualification by other instructions which were given. The trial court gave six instructions for the plaintiff and twenty-five for the defendant. These instructions should be regarded as one charge, and should be considered together. Construing them as a whole, the jury could not

have been led to conclude that the defendant was liable for any negligence which did not cause, or contribute to, the accident."

Applying these principles we are unable to say that the instructions in this case were so contradictory in their enunciation of the law that one cannot be held to cure the other, and are therefore of opinion that the giving of appellee's fourth instruction was not reversible error.

It is also argued by appellant that the evidence is insufficient to authorize a recovery because it is claimed it appears from the proof that appellee was guilty of such contributory negligence as to bar his right of recovery. We could not within reasonable limits set out the testimony in this opinion and will not attempt to do so. It cannot be denied that appellant was guilty of negligence in running its train, which caused the injury, at a rate of speed greatly in excess of that allowed by the ordinance. Whether in consequence thereof the injury resulted, and whether appellee and his servants were in the exercise of reasonable care and caution for the safety of his property at the time, were questions of fact to be determined by the jury under all the facts and circumstances shown by the proof. Two juries have determined these questions for plaintiff, and we see no justifiable reason for disturbing the verdict and judgment in this case.

Believing there is no reversible error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*