## Frank Ward v. Isabel Meredith.

### Gen. No. 4,535.

1. INSTRUCTION—*when, upon liability for injury caused by excessive speed of automobile, not erroneous.* An instruction upon this subject, substantially in the language of the statute prohibiting a greater rate of speed than fifteen miles an hour, which does not conclude with a direction as to a verdict, is not erroneous.

2. AUTOMOBILE—*when obligation to stop arises.* The obligation imposed by statute as to the stopping of an automobile when a horse is about to be frightened, applies as well to cases where the horse has actually become frightened.

3. GENERAL OBJECTION—*when will not avail.* A general objection

will not avail where on appeal the form of the question or of the answer is urged as error.

4. EVIDENCE—*what not conclusion of witness.* It is not a conclusion for one accustomed to the use of horses to testify that a horse was frightened; such a statement is the assertion of a fact.

Action on the case for personal injuries. Appeal from the Circuit Court of Winnebago County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

E. H. MARSH and C. W. FERGUSON, for appellant; CHAS. F. DAVIES, of counsel.

F. H. SMITH and R. K. WELSH, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

On the 23rd day of April, 1904, while appellee and her husband were on their way to the city of Rockford in a top buggy drawn by one horse driven by appellee's husband, they met appellant and party in a large two-seated, canopy-top automobile on the public highway a short distance outside the city limits of Rockford. The horse became frightened at the automobile, plunged off the grade of the highway into a ditch and upset the buggy, throwing the occupants out, thereby breaking both bones of appellee's right arm and otherwise injuring her. This suit was brought to recover damages for said injury. The declaration contained four counts, the first and second of which charged appellant generally with negligence in running and managing the automobile. The third charged him with running at a rate of speed in excess of fifteen miles per hour in violation of the statute of 1903, the fourth with frightening the horse at the approach of the automobile, and failing and refusing to stop as required by the same act. The jury returned a verdict in plaintiff's favor for $2,000 upon which the court rendered judgment, and defendant prosecutes this appeal.

It is not denied that the verdict and judgment were warranted by the evidence. The only grounds upon which a reversal is asked, are, that the court erred in giving ap-

Ward v. Meredith.

pellee's first and sixth instruction, in refusing an instruction asked by appellant, and in admitting improper evidence.

Appellee's first instruction was as follows: " The court instructs you that in any action brought to recover damages either to a person or property caused by running an automobile propelled by mechanical power, in a public highway, at a greater rate of speed than fifteen miles per hour, the plaintiff is deemed to have made out a *prima facie* case by showing the fact that he or she has been injured, and that the person running such automobile either by himself or his agent was at the time of the injury, running the same at a speed in excess of fifteen miles per hour." The point made against this instruction is that it does not tell the jury the injury must have been caused by the excessive rate of speed. The instruction does not direct a verdict, but merely purports to state a proposition of law, and while the phraseology of it as an instruction might have been improved, yet it is so nearly the language of the statute that we do not think, concluding as it does, without any directions as to a verdict, it can be held to have been erroneous. The jury could not have understood the law as laid down in this instruction to be, that a *prima facie* case was made by showing an injury resulting from some cause independent of the excessive speed of the automobile. The first clause of the instruction limits it to actions brought to recover damages to persons or property, *caused by* running an automobile at a greater rate of speed than fifteen miles per hour, and could not have been understood by the jury to have had reference to injuries received from some other cause. In our opinion the instruction could not have been misunderstood by the jury. We think the language of the Supreme Court in C., B. & Q. R. R. Co. v. Haggerty, 67 Ill. 113, where a similar question was discussed, is applicable to this instruction. It was there said, in commenting upon an instruction as to a liability where the railroad company was alleged to have run its train through a village at a rate of speed prohibited by the

ordinance: "Still, the instruction in this respect was given in the language of the statute, and we could hardly pronounce to be error the laying down the law in the words of the law itself." Even if the instruction were open to the objection made, the omission of the missing element was supplied by other instructions given which would cure the defect. C. &. E. I. R. R. Co. v. Crose, 113 Ill. App. 547, and cases there cited. The first clause of appellee's sixth instruction accurately lays down the law as embraced in the second section of the act of 1903, which is as follows: "Whenever it shall appear that any horse driven or ridden by any person, upon any of said streets, roads or highways, is about to become frightened by the approach of any such automobile or vehicle, it shall be the duty of the person driving or conducting such automobile or vehicles to cause the same to come to a full stop until such horse or horses have passed." The instruction, after reciting the requirements of this statute, further told the jury that if they believed from the evidence that the defendant was running an automobile on the highway, and that the horse which was drawing the buggy in which plaintiff was riding "became frightened or showed that it was about to become frightened by the approach of such automobile as the same was approaching said horse, and that the said defendant either knew that fact, or by exercise of ordinary care and diligence in that behalf might have discovered and known that fact, then it became and was the duty of said defendant to cause such automobile to come to a full stop until such horse had passed said automobile." The position of appellant is that the statutory requirement of a person in charge of an automobile to stop, applies only to cases where a horse is about to become frightened, and not to cases where the horse has actually become frightened. We cannot agree to this construction of the statute. It would be putting an interpretation upon it never intended by the legislature, and contrary to the spirit and purpose of the act to say it required the driver of an automobile, when he observed a horse he was ap-

Ward v. Meredith.

proaching was about to become frightened, to stop his machine, but if the horse as they approached, failed to give any premonitory symptoms of fright, but actually took fright, then the driver of the automobile might continue it in motion up to and past the horse, however badly he might be frightened, and however dangerous his doing so might be to the occupants of the vehicle drawn by the frightened horse.  We hold the statutory duty of the driver of the automobile to stop when it appears an approaching horse has become frightened, to be as imperative as when it appears he is about to become frightened.  It will also be observed, the requirements of the instruction is that appellant knew, or might by the exercise of ordinary care and diligence in that behalf have discovered and known, as the horse was approaching that he was frightened or about to become frightened.  The evidence abundantly shows if appellant did not know the horse was frightened, or about to become frightened at the automobile as they approached each other, it was because he was not in the exercise of the care and caution required of him by the common law to avoid injury to appellee.  We think Christy v. Elliott, 216 Ill. 31, sustains the views we have herein expressed, and is conclusive of the merits of this case.

The court gave every instruction asked by appellant except one.  The principles stated in that instruction were fully contained in two instructions given on behalf of appellant, and it was, therefore, properly refused.

Appellee's husband, while testifying as a witness on her behalf, stated the horse became frightened when it came within a dozen rods of the automobile.  Appellant's counsel objected to this answer and moved to have it stricken out.  The objection and motion were overruled and this is the only complaint made of the admission of improper testimony.  The objection now made to this testimony is that it was the statement of a conclusion.  Appellant's counsel stated no grounds of the objection, nor of the motion to strike the testimony out.  If the grounds of objection here made had been stated at the trial it would have

afforded counsel for appellee an opportunity, if he so desired, to have asked another question to obviate the objection. But we are of opinion the objection was not well taken, even if the grounds of it had been stated. The witness was a farmer and had been accustomed to the use of horses all his life, and had driven this one twelve years. It was not a question for expert testimony. What he testified to was not a conclusion nor the expression of an opinion, but the statement of a fact. Its competency is sustained by Gallagher v. The People, 120 Ill. 179; Dimick v. Downs, 82 Ill. 570; City of Shawneetown v. Mason, Id 337; Hardy v. Merrill, 56 N. H. 227; Sydleman v. Beckwith, 43 Conn. 9.

We regard the grounds upon which a reversal of this judgment is asked as being without merit. While the sufficiency of the testimony to authorize a recovery under some one or more of the counts of the declaration is not questioned, we have examined the abstract of it and conclude it fully justified the verdict and judgment. The weight of the proof shows the automobile was running at a higher rate of speed than is permitted by the statute. Besides appellee's husband, three other disinterested witnesses testified on behalf of appellee that it was running at from twenty-five to forty miles per hour. They were watching it as it and the horse approached each other. The horse and buggy were in view of the occupants of the automobile when they were a fourth of a mile apart. The three disinterested witnesses referred to testify that as the two vehicles approached each other, and while they were yet several rods apart, the horse began to show fright, but that the speed of the automobile was not slackened, and as it passed the horse at that high rate of speed, he plunged off the highway, and upset the buggy. True, appellant, his son, daughter and a lady who was riding with them testified the machine was slowed down as they approached the horse, but all admit it was not stopped. They claim not to have observed the horse was frightened or about to become frightened until they passed him. The weight of the testimony of disinter-

ested witnesses shows appellant was driving his automobile at a prohibited rate of speed, in disregard of the law and the safety of the occupants of the buggy. This disregard of consequences is evidenced by the fact that notwithstanding the buggy was upset by the frightened horse and the occupants of it thrown out, appellant continued on his course without stopping to investigate or inquire whether any injury to those in the buggy had been caused by the accident. Appellee's case is so meritorious on the facts that a reversal would not be justified, unless some error of a really prejudicial character to appellant had been committed, and finding no such error in this record, the judgment is affirmed.

*Affirmed.*