# The Chicago, Burlington and Quincy Railroad Company

## v.

## John T. Haggerty.

67   113|
42a  437|
─────────
67    113̄
190  ³543
─────────
67    113
200  ¹319
e200 ²320
─────────
67    11̄3
ǂ202 ³566|
─────────
67    11̄3|
214  ¹489'
214  ³614|
e113a³557|
e113a³558|

1. Municipal corporation—*power to regulate speed of railroad trains.* Where the charter of an incorporated town gave the board of trustees power to declare what should be considered nuisances and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants of the town might require: *Held,* that under these powers the town possessed the authority to so order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens, and to adopt an ordinance prohibiting the running of engines and cars within its limits at a greater rate of speed than six miles per hour.

2. Constitutional law—*exercise of the police power as to railroads.* Where an ordinance of a town prohibited the running of engines and cars within the limits of the town at a greater speed than six miles per hour, it was urged by a railroad company that the regulation interfered with the powers conferred upon it in its charter to fix and regulate the rate of speed of trains upon its road, but it was *held,* that the company had no just cause of complaint, as the privileges conferred upon it were as much subject to the police laws of the State as an individual pursuing his business.

3. Negligence—*injury by railroad train running at speed prohibited by ordinance.* In a suit against a railroad company to recover for the killing of a cow in an incorporated town, the court instructed the jury, on behalf of the plaintiff, that if they believed from the evidence " that the cow of the plaintiff was killed within the corporate limits of the town of, etc., by a railroad train of the defendant, and that said train, at the time said cow was killed, was being run at a greater rate of speed than that prescribed by the ordinance of the said town of, etc., which has been read in evidence, then said defendant is presumed to be guilty of negligence in killing the cow of the plaintiff:" *Held,* that the instruction, though somewhat open to the objection that it might be understood that the facts created a conclusive instead of a *prima facie* presumption of negligence, yet, being in the language of the statute, could not be pronounced erroneous.

Appeal from the Circuit Court of Adams county; the Hon. Joseph Sibley, Judge, presiding.

8—67th Ill.

This was an action commenced by John .T. Haggerty against the Chicago, Burlington and Quincy Railroad Com-. pany, before a justice of the peace, to recover the value of a cow killed by defendant's train within the limits of the town of Camp Point.

The cause was taken by appeal to the circuit court, where a trial was had, resulting in a verdict and judgment in favor of the plaintiff for $50, from which judgment the defendant appealed to this court.

On the trial the plaintiff, after proving the killing and value of the cow, and that the killing took place within the limits of the town of Camp Point, an incorporated town, and that the train which struck the animal was running at the speed of from twelve to fifteen miles per hour, then produced and read in evidence, having first proved the due publication thereof, the following ordinance of the town:

" Ordinance 24.—*Regulating speed of railroad trains, etc.* Whereas, the good and safety of the inhabitants of the town of Camp Point require that the rate of speed of locomotive engines and cars upon the railroads within said town be regulated and restrained, therefore,

*Be it ordained by the President and Board of Trustees of the town of Camp Point:* Section 1. That no locomotive engine, car, or trains of cars, shall be propelled, driven or run upon the track of any railroad within the limits of the town of Camp Point, at a greater rate of speed than six miles per hour.

Sec. 2. It is hereby declared that the running or driving of any locomotive engine, car, or trains of cars, upon any track of any railroad within said town, at a greater rate of speed than six miles an hour, shall be deemed and considered a nuisance, and the same is hereby prohibited."

The third section provides a penalty of not less than $50 nor more than $100 for a violation of the ordinance.

The defendant objected to the introduction of the ordinance, but the court overruled the objection and the defendant excepted.

Messrs. BROWNING & BUSHNELL, for the appellant.

Mr. J. M. CYRUS, and Messrs. WHEAT & MARCY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The admission in evidence of the ordinance of the town of Camp Point prohibiting the running of trains within the town at a greater rate of speed than six miles per hour, is first assigned for error.

It is contended that the ordinance is null and void, because the town had no authority to pass such an ordinance, and because the company was expressly authorized by law to fix and regulate the rate of speed of trains upon its road. There is no grant of power to this town, in express terms, to regulate the rate of speed of railway trains passing through the town, but by its charter (Pr. Laws 1857, pp. 540 and 541) the board of trustees of the town have the power to declare what shall be considered as nuisances, and to prevent and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants of the town may require. Under these powers we think the town possessed the authority so to order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens; and we view the ordinance in question as but a police regulation for the preservation of the safety of persons and property, the adoption of which was no more than a fair exercise of the police power vested in the town. Nor has the railway company any just ground of complaint that the regulation interferes with the powers conferred upon it in its act of incorporation or by any other law of the State. In the exercise of the privileges

so conferred upon it, the company is as much subject to the police laws of the State as an individual pursuing his business., *G. and C. U. R. R. Co.* v. *Loomis*, 13 Ill. 548.

It is further assigned as error, the giving of plaintiff's second instruction and the refusal of instructions asked by defendant.

Plaintiff's second instruction was:

"2. If the jury believe, from the evidence in this case, that the cow of the plaintiff was killed within the corporate limits of the town of Camp Point, by a railroad train of the defendant, and that said train, at the time said cow was killed, was being run at a greater rate of speed than that prescribed by the ordinance of said town of Camp Point, which has been read in evidence, then said defendant is presumed to be guilty of negligence in killing the cow of the plaintiff."

The objection taken to the instruction is, that it was calculated to mislead the jury by giving them to understand that the presumption of negligence therein named was a *conclusive* presumption.

The instruction was based upon the second section of the law of February 16, 1865, Sess. Laws 1865, p. 103, which is as follows:

Section 1. That hereafter whenever any railway company who shall, by themselves or agents, run, or put their trains or engines to be run, at a greater rate of speed, through the incorporated limits of any city or town in this State, than is permitted by the city or town ordinances respecting said railroad company, said railroad company so violating said ordinances, either by themselves or agents, as aforesaid, shall be liable to each individual sustaining damage done by said train or engine, to the full extent of such damage.

Sec. 2. Should any live stock be killed by any of the railroad companies, or their agents, in manner set forth in section one of this act, the same shall be presumed to have been done by the negligence of said company or their agents.

The instruction is no doubt somewhat open to the objection made, that it might be understood by the jury that the presumption of negligence, where the killing of the animal took place under the circumstances stated, was conclusive, and not subject to be rebutted by proof of the actual facts to the contrary. Still, the instruction in this respect was given in the language of the statute, and we could hardly pronounce to be error the laying down the law in the words of the law itself.

Had defendant's counsel been apprehensive that the jury might be misled by the instruction as to the character of the presumption, he might have asked, on his part, an explanatory instruction to the effect that the presumption was not a conclusive but only a *prima facie* one.

And such, in effect, may be considered the fourth instruction which was given on behalf of the defendant, as follows:

"4. That if the jury believe, from the evidence, that the cow was on the railroad track at the time of the injury, as stated by the witnesses, then she was wrongfully there, and if they believe, from the evidence, that she was injured without the fault of the defendant, and when the employees in charge of the train were using proper care and diligence to avoid the injury, that then they will find a verdict for the defendant."

The refused instructions which were asked by the defendant were manifestly erroneous, in view of the act of February 16, 1865, above cited, except the second one of them, and that we regard as substantially embraced in the fourth instruction which was given for the defendant.

Perceiving no sufficient error in the record to require a reversal of the judgment, it must be affirmed.

*Judgment affirmed.*