# CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY

## v.

# P. J. AHRENS & SON.

*Railroads—Negligence—Killing of Stock—Prohibited Rate of Speed—Ordinance—Contributory Negligence—Stock Running at Large—Signals.*

1. The decision of controverted questions of fact is intrusted by our laws to juries, and their decisions are final unless passion, prejudice or partiality appear to have controlled their action.

2. When the evidence in a case is conflicting, and there is sufficient to authorize the verdict, an appellate court will not interfere with the finding.

3. Where stock is killed by a railroad company within village limits, in an action to recover therefor the ordinances thereof touching speed of trains are admissible.

4. To obtain a ruling of this court as to the sufficiency of a document, the whole of it should be preserved in the bill of exceptions.

5. It being shown that stock was killed within municipal limits, by a train running at a prohibited rate of speed, the presumption arises that the killing was the result of negligence, and such presumption fixes the liability of the company to pay therefor, unless it is removed by evidence.

6. If counsel in a given case fear that the jury may regard documents introduced as proper for their consideration, notwithstanding a ruling of the court to the contrary, they should move the court to formally withdraw them from the jury. Failing to do this in the trial court, the point should not be raised herein.

7. If stock was unlawfully at large, either by the voluntary act of its owner or by his negligence, a railroad company will be liable for killing the same if its servants could, by the exercise of proper care and prudence in managing the train after discovering the same, have avoided the injury.

8. What constitutes proper care and prudence in a given case, is a question of fact for the jury.

9. Reasonable diligence must be used as soon as it is discovered that animals are in danger, and this may occur before they are on the track.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Macoupin County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. JOHN T. DYE and A. N. YANCEY, for appellant.

Mr. A. OLLER, for appellees.

BOGGS, J.  A horse and a colt belonging to the appellees were killed by a train of the appellant company, within the limits of the village of Gillespie, on the 2d day of September, 1890.

In the court below a judgment was rendered upon the verdict of a jury in favor of the appellees against the appellant for the value of the animals, to reverse which this appeal was taken.

The appellees contend that the horse and colt were struck and killed by a passenger train of the appellant company which passed through Gillespie going west, a little after six o'clock in the morning, while the appellant insists that they were struck by a freight train which passed between one and two o'clock of the same morning.

The speed of the passenger train is shown by the witnesses for the appellees to have been at least twenty miles per hour, while a preponderance of such testimony would fix its rate of speed at thirty to thirty-five miles per hour.  The appellant produced no evidence concerning the speed of the passenger train. The rate of speed of the freight train, from the uncontradicted testimony of the witnesses of the appellant, was from four to five miles per hour.

The testimony presented to the jury by the respective parties, bearing upon the question of which of the trains struck the animal, was directly conflicting.

F. M. Shenacker, a witness for appellees, testified that he lived sixty or seventy yards north of where the stock was killed; that he got up about five o'clock in the morning on that day and saw the horse and colt grazing near the sidewalk in front of his house, and that they were there when he went into the house to his breakfast; that the passenger train came by shortly after he sat down at the breakfast table.  W. H. Clark, witness of appellees, saw the horse and colt about six o'clock in the morning feeding near the railroad track close to a switch.  They were then uninjured.  Charles Tate,

another witness, saw the horse that morning early, just before the passenger train came. The horse was picking grass. Mrs. Tate saw the horses running from the passenger train along the "bank" of the railroad. She watched them a few seconds, but didn't see the train strike them. She saw a number of men gathering about the horses a few minutes afterward and saw that the horses were hurt.

The horse was used by appellees to deliver groceries to the people of the village and was well known to the witnesses.

The engineer, fireman and conductor of the freight train all testify that between one and two o'clock of the same morning, the engine of their train struck a horse and a colt opposite the switch about west of the depot at Gillespie, which is the point where appellees' animals were struck.

The decision of controverted questions of fact is intrusted by our laws to a jury, and its decision is final unless passion, prejudice or partiality appear to have controlled their action. Nothing of the kind seems to have occurred in this case. The evidence for the appellees was quite sufficient to authorize the jury to find that the animals were struck by the passenger train, and in all such instances the finding must be a finality in an appellate court.

The only testimony as to the management or operation of the passenger train came from witnesses for the appellees, and from that it appears that after the animals were running before the train, the speed of the train was not slackened nor was the bell rung or the whistle sounded.

To support the position that the passenger train was running at a prohibited rate of speed, the appellees offered in evidence an ordinance of the village of Gillespie limiting the speed of such train to ten miles per hour. The appellant objected to the ordinance upon the ground that it was not relevant. This the court overruled. The claim of appellees was that the stock was killed within the limits of the village, which was clearly proven. Therefore the ordinance was entirely relevant and that objection was properly overruled. No other objection being interposed the ordinance was read to the jury. After it had been so read counsel for appellant

objected on the ground that the ordinance was not "properly authenticated." The ruling of the court upon this objection was, "The objection is overruled. This purports to be the ordinance of the village as shown by the proclamation on the face of it and the certificate at the end of it."

The bill of exceptions does not contain the "proclamation" nor the "certificate" referred to by the court. Both were before the court and upon inspection were deemed sufficient. Manifestly we can not say they were insufficient. To have obtained a ruling as to their sufficiency the bill of exceptions should have contained them. We must accept the ruling of the court as correct and that the ordinance was duly proven.

It is then established that the stock was killed by the passenger train of appellant while running at a prohibited rate of speed in the village limits. The statutory presumption then arises that the killing was the result of the negligence of the company. This presumption fixes the liability of appellant to pay for the stock unless it is removed by evidence. The appellant introduced no evidence whatever concerning the management or operation of the passenger train or otherwise to rebut the presumption, and all that appears bearing upon that question in the evidence produced by the appellees is in aid of the presumption of negligence; that is, that the speed of the train was not slackened, and that the bell was not heard to ring nor the whistle to blow. The presumption not being overcome, the finding that the appellant was liable for the value of the stock necessarily followed, unless it appeared that the plaintiff was guilty of contributory negligence. Sec. 87, Chap. 114, Starr & C. Ill. Stats.; T., P. & W. Ry. Co. v. Deacon, 63 Ill. 91; C., B. & Q. R. R. Co. v. Haggerty, 67 Ill. 113.

Appellant urges that the appellees were guilty of contributory negligence in permitting the animals to be at large, and that the court erred in this connection in the action taken concerning an ordinance of the village which was read to the jury, authorizing such animals to run at large in the village, and also in refusing to give one instruction asked for by appellant and in modifying another. The ordinance last referred to was offered in evidence by the appellees.

It was objected to by appellant as being irrelevant. It was

entirely relevant and the court so held, and in the absence of other objections the ordinance was read to the jury. After the reading counsel for appellant objected again upon the ground that the ordinance had been pasted in a printed book of ordinances and not certified to as the law required.

This objection was sustained and so announced by the court in the presence of the jury. Thereupon the appellees sought to prove the passage and publication of the ordinance by the village records, and failing in this, endeavored to prove that the county had, by a vote, permitted such stock to run at large. In this they also failed. The attention of court and counsel being thus diverted, it seems that the ordinance was not formally withdrawn from the consideration of the jury.

If counsel for appellant feared that the jury might regard the ordinance as proper for their consideration, notwithstanding the ruling of the court sustaining the objection to it, they should have moved the court to formally withdraw it from the jury. Such an objection can not be made for the first time in an appellate court.

Furthermore, the result should, we think, have been the same had the ordinance been withdrawn.

The uncontradicted testimony is, that the horse was placed the night before in the stable, and that the door of the stable was closed, and that the colt was put in a lot surrounded by a sufficient fence, the gate whereof was closed and locked. They escaped during the night. It is true that one of the appellees saw the animals the next morning out upon or near the railroad track. No effort was made to bring them back to the stable or yard. This, it is insisted, constitutes contributory negligence, no ordinance being proven allowing the stock to be at large. The case of I. & St. L. R. R. Co. v. Peyton, 76 Ill. 340, is here in point. In that case it is said:

"The defense is negligence on the part of the plaintiff in permitting his cow to run at large, in violation of an ordinance of the town, thus contributing to the accident.

"A positive violation of the law of the State is established against the company and a positive violation of an ordinance of the town, is also established. The negligence of the appellees was slight as compared with that of the company, which

was gross.    We will not reverse and remand the cause where we are satisfied that the same verdict would be rendered under a proper instruction."

In the case at bar, as in that cited, it was proved that no bell was rung or whistle sounded, and that the train was moving at a higher rate of speed than the ordinance allowed. Such was then declared to be gross negligence, and so it was here.    Permitting the animal to run at large was then held to be slight negligence, not warranting a reversal of the case. So we regard it in this case.

The court gave the jury this instruction:   " The court instructs the jury, that if they believe from the evidence in this case that at the time in question the plaintiffs' horse and colt were *intentionally or negligently* permitted to run at large in the village of Gillespie, and under such circumstances that it might reasonably have been foreseen or anticipated that they would get upon the defendant's tracks, then the plaintiffs can not recover of the defendant for killing or injuring of the animals, on the ground alone that this defendant's servants were guilty of negligence in managing their train."

It was asked by the appellant as given, except the italicized words, " intentionally or negligently," which were inserted by the court.    This modification is assigned as error.

If the animals were unlawfully at large, either by the voluntary act of the appellees, or by their negligence, still the company would have been liable if its servants could, by the exercise of proper care and prudence in managing the train after discovering the animals, have avoided the injury.    T., W. & W. Ry. Co. v. Barlow, 71 Ill. 642.

In the case of P. P. & J. R. R. Co. v. Champ, 75 Ill. 577, it is said :   " Although the plaintiff was guilty of contributory negligence by his unlawful act in turning his horse upon the commons where he knew it would escape upon the railroad, this fact did not relieve the company from the duty to exercise proper care and observe all reasonable precautions to avoid an accident."

The instruction as given was more favorable to the appellant than the law warranted.

The court refused to give the following instructions asked by the appellant, viz.:

"The court further instructs the jury, that if they believe from the evidence in this case that the servants of the defendant used all reasonable diligence to stop the train after the plaintiffs' horses came upon the track, then the jury should find for the defendant."

The rule in such cases is, that the company is not, in general, liable, unless its servants, after they discover *the animal is in danger*, might, by the exercise of proper care and prudence, have prevented an injury. T., W. & W. Ry. Co. v. Barlow, *supra*.

The duty of the company in such cases is not only to use reasonable diligence to stop the train, as is said in the refused instruction, but its duty is to exercise all proper care and observe all reasonable precautions to avoid the accident. So it is expressly said in P. P. & J. R. R. Co. v. Champ, 75 Ill. 579.

Why should not the bell be rung and the whistle sounded? What constituted proper care and prudence was a question of fact for the determination of the jury.

Nor is it necessarily true, as stated in the instruction, that the company would not be liable if its servants used reasonable diligence, "after the horses came upon the track."

Reasonable diligence must be used as soon as it is discovered that the animals are in danger, and this may occur before they are on the track. The instruction was properly refused.

Nothing is offered in support of the assignment that the court refused proper evidence offered by the appellant, nor is any specific objection made to any instructions given for the appellees, though one of the assignments of error is, that the court erred in giving each and every one of them. We have examined the instructions for the appellees and think they fairly and correctly state the law.

The remaining assignments raise the question of the sufficiency of the evidence to support the verdict. As before said, we think it sufficient.

Finding no reversible error, the judgment is affirmed.

*Judgment affirmed.*