The Chicago and Eastern Illinois Railroad Company

*v.*

John A. Crose.

*Opinion filed February 21, 1905—Rehearing denied April 14, 1905.*

1. Negligence—*contributory negligence is ordinarily a question of·fact.* Contributory negligence by the plaintiff in an action for negligence is a question of fact for the jury, if the evidence upon the question is conflicting or there is any evidence tending to support the verdict or induce reasonable minds to reach different conclusions, and is conclusively settled by the judgment of the Appellate Court affirming the judgment of the trial court.

2. Same—*violation of a speed ordinance is prima facie negligence.* Violation of a speed ordinance, set out in the declaration and proved on the trial, by defendant in running its train through the village limits, is, under the statute, *prima facie* negligence, and the question whether the proof rebuts such presumption is a question of fact for the jury, under proper instructions.

3. Railroads—*rights of one loading car at direction of station agent.* One who drives his team between the tracks of a railroad company, at the direction of the station agent, to load a car, has a right to presume that his position will not be rendered hazardous by any act of negligence by the company, and while rightfully loading the car is not bound to exercise the same care in looking and listening for trains as he would if not so engaged.

4. Same—*what is not contributory negligence as a matter of law.* Driving a team known to be afraid of cars between the main track and side-track of a railroad at the direction of the station agent, for the purpose of loading wood from the wagon into a car, after the owner has asked to be allowed to load in some other way, is not, as a matter of law, negligence on his part contributing to the injury caused by the frightening of the team on the sudden approach of a train running at a speed prohibited by ordinance.

5. Evidence—*competency of photographs to contradict testimony of witness.* Photographs offered in evidence for the purpose of contradicting a witness or of explaining a transaction are only competent when they are shown to have been taken so as to correctly exemplify the actual situation, circumstances and surroundings at the time of the transaction testified to.

6. Same—*when refusal to admit a paper containing impeaching statement is not prejudicial.* Refusal to admit a paper containing statements conflicting with the testimony of a witness is not prejudicial, where the witness admits that he signed the paper and the

questions and answers are read from the paper by counsel in the presence of the jury.

7. INSTRUCTIONS—*when instruction as to the effect of running trains at prohibited speed is not erroneous.* An instruction holding that it is negligence for a railroad company to run its trains through corporate limits at a rate prohibited by ordinance, and that if it "does so run its trains, and *thereby* injures or destroys the property of a person who is himself in the exercise of reasonable care and caution to avoid injury to such property, the company will be liable," is not subject to the objection that it fails to require the unlawful speed to be the proximate cause of the injury.

8. SAME—*when instruction as to killing of stock does not direct a verdict.* An instruction holding that "when a railroad company runs its trains through a city, incorporated town or village at a greater speed than is permitted by the ordinances of the city, town or village, and stock is killed or injured by said train while so running, the injury will be presumed to have been done through the negligence of the railroad company," is not subject to the objection that it directs a verdict.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. R. W. HILSCHER, Judge, presiding.

This is an action on the case, brought by appellee in the circuit court of Iroquois county, to recover damages for the killing of his team of horses, and injury to a team of mules, wagon and harness, by being struck by a train of appellant. Trial was had before a jury at the November term, 1901, resulting in a verdict for $325 in favor of appellee. A new trial being granted, the second verdict was for $350, which has been sustained by the Appellate Court. A certificate of importance has been granted, and the case is here by appeal.

Milford is an incorporated village on the line of appellant's road. Through the limits of the village, extending north and south, appellant has a double track, trains going north using the east track and trains going south using the west track. East of the east main track was a side-track, which ran north and south parallel with the east main track

for a certain distance, and at the south end curved to the west or south-west so as to unite with the east main track. Three parallel streets extending east and west crossed these tracks. The north one of these three streets was Jones street, the middle one Lisle street and the south one Ashford street. On the block between Jones and Lisle streets was appellant's depot, which was on the west side of the main track. The side-track begins to curve to the south-west in the south part of the block between Lisle and Ashford streets, just north of Ashford street, and it unites with the east main track on the south side of Ashford street. On the afternoon of February 4, 1901, appellee and his employees, with four wagon loads of wood, drove east on Lisle street, crossed the two main tracks, turned into the space between the east main track and the side-track, and drove south to a point about one hundred and fifty or one hundred and seventy feet south of Lisle street and about forty feet north of Ashford street. The space between the east rail of the east main track and the west rail of the side-track was twenty feet wide on the south side of Lisle street at the point where appellee with his teams entered the space, but narrowed towards the south, and where the cars into which appellee was to load his wood stood on the side-track, the space between the side-track and the east main track was about fifteen feet wide. The first team was driven by Samuel Lyons, the second by Samuel Crose, a son of appellee, the third by Frank Hevron, and the fourth by appellee. The team driven by Lyons stopped opposite the south car which was to be loaded. On the east side of the track, opposite the place where these cars stood, there were certain lumber piles and coal sheds, so that the cars could not be loaded from the east side of the side-track and had to be loaded on the west side of the side-track opposite the east main track. After the teams had taken their stations alongside of the cars, and while the men were engaged in loading the wood into the cars, a fast passenger train approached from the south upon the east main track, running

at the rate of from thirty to sixty miles per hour. It was due at Milford at 3:15 in the afternoon and was about seven minutes late. Some of the witnesses testified it was running at the rate of fifty to sixty miles an hour, while the engineer testified that it was running at the rate of from thirty to thirty-five miles an hour. There is some conflict in the evidence as to whether the bell was rung or whistle sounded as the train approached a bridge about one-half mile south of the cars. As the train approached the cars the team driven by Hevron became frightened. He jumped from his wagon, or from the car, and attempted to hold the horses by the bits, but they swung him and themselves against the car and he and the team were instantly killed. The team back of him, and the wagon and harness, were also injured. There is no dispute as to the property being worth $350.

Freeman P. Morris, and Frank L. Hooper, (W. H. Lyford, and E. H. Seneff, of counsel,) for appellant.

Dyer & Wallbridge, for appellee.

Per Curiam : At the close of appellee's evidence, and again at the close of all the evidence, the defendant requested the court to instruct the jury to find it not guilty. The court refused both requests, and that refusal is assigned as error.

The principal contention on this branch of the case is that appellee was guilty of such contributory negligence as should bar a recovery. In cases of this kind the question as to whether or not a person was guilty of contributory negligence is generally one of fact for the jury, and only becomes a question of law when the evidence so clearly fails to establish due care that all reasonable minds would reach the conclusion that there was such contributory negligence. (*Hoehn* v. *Chicago, Peoria and St. Louis Railway Co.* 152 Ill. 223; *Beidler* v. *Branshaw,* 200 id. 425.) If the evidence on the question is in conflict, or if there is evidence fairly tending

to support the verdict, or if reasonable minds might arrive at different conclusions, it is a question of fact and must be submitted to the jury, (*Werk* v. *Illinois Steel Co.* 154 Ill. 427,) and its verdict, and the judgment of the trial court, affirmed by the Appellate Court, are final and conclusive.

It cannot be seriously contended that the evidence in this record does not make a case of *prima facie* negligence against the defendant company at the time of the accident. There was then in force in the village of Milford an ordinance making it unlawful for any railroad company to propel any engine or train upon any railroad track within the limits of the village at a greater rate of speed than ten miles per hour. This ordinance was pleaded *in hæc verba* in one of the counts of the declaration and was introduced in evidence upon the trial. Section 87 of chapter 114 of Hurd's Statutes of 1903 provides, that whenever any railroad corporation shall run any train or engine or car at a greater rate of speed through the incorporated limits of any city, town or village than is permitted by any ordinance thereof, such corporation shall be liable to the party aggrieved for all damages done to persons or property by such train, engine or car, and the same shall be presumed to have been done by the negligence of said corporation or its agents. It is undisputed that the train which caused the injury in this case was running at a greater rate of speed than ten miles per hour, in violation of the village ordinance, and this being so, a *prima facie* case of negligence was established against the appellant, (*Illinois Central Railroad Co.* v. *Ashline,* 171 Ill. 313,) and the injury must be presumed to have been inflicted by the negligence of the appellant company or its agents operating such train, and in such case it would be liable for all damages occasioned thereby. Such presumption may be rebutted, but the question whether the appellant's evidence was sufficient, under all the circumstances, to overcome the *prima facie* proof of negligence was a question for the jury and was properly submitted to it, and the judg-

ment of affirmance by the Appellate Court is conclusive. *Louisville, Evansville and St. Louis Railroad Co.* v. *Spencer,* 149 Ill. 97; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Hornsby,* 202 id. 138.

It is earnestly contended by counsel for appellant that the evidence so far fails to prove that the plaintiff was not himself guilty of contributory negligence as to resolve that question into one of law for the determination of the court. In support of this position it is insisted that the evidence shows that prior to the accident he had been hauling wood to Milford and loading it in cars on appellant's track, and was familiar with the situation, side-tracks and all other surroundings; that he knew the team which was killed was afraid of the cars, and also that the fast train which caused the injury was due at the time he drove between the tracks; that he did not look or listen for the train, and after he heard it whistle at the bridge he had sufficient time to unfasten the team and thus avoid the accident, and that there is no evidence tending to show that the speed of the train in any way contributed to the accident. There is evidence to the effect that on the morning of the accident appellee applied to the agent of the appellant company for cars to be loaded with wood, and asked the agent to permit him to load the cars farther north of the place of the accident, on a side-track near the elevator, so that he could approach the track from the east side and not be compelled to enter the space between the side-track and the main track, but was informed by the agent that the side-track farther north was occupied by other parties and he would have to load his cars between the tracks. It must be inferred from this evidence that he was attempting to unload his wood into the cars at the place of the accident and drove his team in the space between the tracks by the direction of the defendant or its agent, and he therefore had the right to assume that the defendant would not render his position hazardous by any act of negligence on its part. (*Chicago and Northwestern Railway Co.* v.

*Goebel,* 119 Ill. 515.) As to his duty to watch and listen for
approaching trains, it must be borne in mind that he had the
right to presume that such trains would be run with proper
care, and also that he and his men were rightfully engaged
in unloading the wood at the time, and therefore were not
bound to exercise that degree of care in looking and listen-
ing which would have been required of them had they not
been so engaged. The evidence further tends to show that
the car furthest south upon the side-track was larger than
the other cars, and on account of its size and the curve of the
track it obstructed the view of an approaching train; also,
that no whistle was sounded or bell rung upon the approach-
ing train, and that the first knowledge appellee had of the
danger was the smoke from the engine as it appeared over
the top of said southernmost car, and from the time the
smoke was so seen until the train passed causing the injury
there was not sufficient time within which to remove the
horses or otherwise avoid the accident. It was also further
shown that on account of the train being late appellee sup-
posed that it had already passed before he drove in the space
between the tracks. It is true that as to most of these facts
there is an irreconcilable conflict in the evidence, but it can
not, we think, be seriously claimed that there is no compe-
tent testimony fairly tending to establish them, or that, con-
sidered together, they do not fairly tend to prove that the
plaintiff was at the time of the injury in the exercise of ordi-
nary care for the safety of his property. Unless it can be
said that he was guilty of negligence in driving his team
between the tracks the evidence clearly justifies the conclu-
sion that he was not guilty of contributory negligence; and
we think it equally clear that it cannot be said, as a matter
of law, that he was negligent in so driving between the
tracks. As already said, he was there in the lawful trans-
action of business with the defendant company and by the
direction of its agent. The trial court properly refused to
take the case from the jury.

The defendant offered in evidence three photographs, which, on objection by counsel for plaintiff, were excluded, and this is assigned for error. The appellee, who drove the fourth wagon and came up behind the other three between the tracks, testified that he was unable to see the approaching train when it reached the bridge, which is about a half mile south of the place of the accident, because the corner of the south car, located at a point where the side-track curved to the west to join the main track, projected over the west side of the side-track about two feet and thus obstructed the view to the south. The photographs were offered for the purpose of contradicting this testimony by showing that the view was not obstructed in the manner stated, and also for the purpose of showing the location of the tracks and cars at the place of the accident. Photographs offered in evidence for the purpose of contradicting witnesses or explaining a transaction are only competent when they are shown to have been so taken as to correctly exemplify the actual situation, circumstances and surroundings at the time. When the situation and surrounding circumstances are subject to change, photographs, to be of any value as evidence, must be shown to have been taken at the time or when the situation and surroundings are unchanged. (*Chicago and Alton Railroad Co.* v. *Corson,* 198 Ill. 98; *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 id. 89.) In this case the evidence shows that the photographs were taken twelve months after the transaction. The situation as to cars on the side-track and the approaching fast train had necessarily changed. An attempt was made by the agent of the company to replace similar cars in similar positions on the side-track, but he testified that he did not know just exactly how far it was from the main track to the south car, but says that after he looked the situation over "he could tell within a few feet of it." He took no actual measurements of the situation as it existed on the day of the accident. One of the witnesses, in testifying in regard to the photographs, says as to the location of the

cars as shown by them, "Of course, it might have varied a few feet." The offered photographs do not show wagons alongside the cars in the space between the side-track and the main track, although it is undisputed that there were three wagons ahead of the one on which appellee was sitting when he testifies he first saw the smoke from the engine. There were piles of lumber both east and west of the side-track at the time of the accident, and the photographs do not show them. It also appears from the evidence that one of the cars placed on the side-track for the purpose of taking the photographs was different in size from the one which stood there at the time of the accident. Another witness called to verify the correctness of the photographs says, "We stood a car as near as we could remember where the car stood, just about a year after the accident." It needs no argument to show that a variation of a few feet in the location of the cars might make a vast difference as to whether the view was obstructed at the time of the injury or not. The testimony of the appellee is that he was on the east side of his wagon, next to the cars on the side-track, when he discovered the smoke. Only one of the photographs offered in evidence purports to have been taken while the photographer stood with his instrument in the neighborhood of the place where appellee was at that time. A photograph taken under the circumstances shown by the evidence in this case would certainly be incompetent to contradict the testimony of the plaintiff below, and would have tended rather to mislead and confuse the jury than to enlighten them. A colored plat or map showing the location of the tracks and the situation was introduced in evidence. It is admitted by counsel for appellant that this map gave a general idea of the tracks and surroundings at the place. Witnesses were also introduced by the defendant who testified to the effect that the view of the track from the direction of the approaching train was unobstructed as far south as the bridge, thus contradicting the testimony of the plaintiff sought to be disproved by the pho-

tographs. We are clearly of the opinion that the pictures or photographs offered in evidence and objected to by counsel for the plaintiff were, under the evidence in the case, incompetent and properly excluded. But if it were otherwise, the exclusion of the testimony worked no injury to the defendant. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Monaghan,* 140 Ill. 474.

One Samuel Lyons drove the first team that entered the space between the tracks and stopped alongside the south car. In his testimony as a witness for the plaintiff, on direct examination he said: "I saw the smoke before I saw the train, and the train then came in sight in a short time; I just got hold of my horses; as I remember, I was on my wagon then and jumped down; I don't think any of these parties had unloaded any wood from these four loads before the train came." Upon cross-examination his attention was called to a statement which he had made a few days after the accident, before a police magistrate by the name of Cleaver, and was asked if this question was not put to him by Cleaver at that time: "State fully how the accident occurred and what the injured person was doing when it happened; where were you at the time of the accident and what were you doing?" And whether he did not make the following reply to that question: "Can't say just how the accident occurred, but do know that the injured person was unloading wood from a wagon into a car standing on the east switch; I had charge of one of the teams hauling wood, and as soon as I saw the train approaching went to the head of my horses so as to hold them, and was so engaged at the time of the accident." The object of this examination was to impeach the witness by showing that he had, in the prior statement made by him, contradicted what he said as a witness upon the trial. At the trial he said he did not think that any one of the parties had unloaded any wood before the train came, whereas in the statement made before the magistrate he had stated that the injured person,—that is, Hevron,—was unloading wood

from a wagon into a car standing on the east switch. The trial court refused to admit the written statement, and this is charged to be error. An examination of the testimony of the witness will show that he admitted that he made the statement in question before Cleaver, the magistrate. He said: "The paper which you show me  *  *  *  has my signature on the back of it; I signed it on February 7, 1901; Cleaver wrote it out for me and read it over to me; I think, as well as I can remember, that he asked me the questions; I gave Cleaver the information from which he wrote down these answers; I think he then read the paper over to me and I then signed it; this was at Mr. Cleaver's office in Milford, on February 7, 1901." In *Illinois Central Railroad Co.* v. *Wade,* 206 Ill. 523, we said (p. 532): "If a witness admits that he made statements imputed to him to have been made, as fully as claimed to have been made, further proof of the fact may be unnecessary; but when the witness denies or does not directly admit that he made the statement, the impeaching proof should be permitted to be given." It appears here that the question as claimed by counsel for appellant was addressed to the witness and that he made the answer which he is charged with having made. In view of this admission the fact of the contradiction was before the jury even though the written statement made before the police magistrate was excluded. In addition to this, Cleaver, the magistrate, was placed upon the stand by the defendant and asked if he did not address the question set forth in the written statement to Lyons, and if he did not make an answer thereto, also set forth in the written statement. He testified that he asked Lyons the question and that Lyons gave the answer set forth in his statement. It is evident, therefore, that appellant could not have received any greater benefit from the introduction of the written statement itself than it had from the proof thus introduced of what was in the written statement. And again, inasmuch as the question and answer sought to be introduced to the jury were read from the paper in their

presence, in connection with the testimony of Cleaver, it is impossible to see how the appellant was prejudiced in any way because the paper itself was not admitted in evidence.

Appellant sought to prove the result of a certain experiment made by a witness, Borg, with a board two and one-half feet wide, which it was claimed was placed approximately where the south end of the south car stood at the time of the accident, and that, standing back and looking to the south, it furnished no obstruction to the view of the track. The object of this testimony was to contradict appellee as to the south car obstructing his view of the approaching train. The court refused to admit the testimony, and we think properly. The position and width of the board and the position of the witness Borg were altogether dissimilar from the situation of the car and the plaintiff, according to his testimony. Such an experiment would in no way tend to disprove the testimony of the plaintiff. As we have already said, the court had permitted witnesses, who testified that they were familiar with the situation and location at the time of the accident, to state how far the track could be seen south by a person standing between the main and side-tracks north of where the accident occurred, under the conditions that existed at the time of the accident. We find no substantial error in the rulings of the trial court upon admission or exclusion of testimony.

It is insisted that the court erred in giving the second, third and fourth instructions on behalf of the plaintiff. The second is as follows:

"The court instructs the jury that it is negligence on the part of a railroad company to run its trains through a city, incorporated town or village at a rate of speed prohibited by law, and if a railroad company does so run its trains, and thereby injures or destroys the property of a person who is himself in the exercise of reasonable care and caution to avoid injury to such property, the company will be liable."

The insistence is that the instruction fails to state that the proximate cause of the injury must be the unlawful speed of

the train. We do not think the instruction should be so construed. The language is, "if a railroad company does so run its trains, and thereby injures or destroys the property of a person." This means that if a railroad company runs its train at a prohibited rate of speed, and thereby,—that is, by so running at a prohibited rate of speed,—it injures the property of another, the company will be liable. The word "thereby" refers to the unlawful rate of speed, and therefore the instruction does, in effect, require the speed of the train to be the proximate cause of the injury.

The third instruction is as follows:

"The court instructs the jury that when a railroad company runs its trains through a city, incorporated town or village at a greater rate of speed than is permitted by the ordinance of the city, town or village, and stock is killed or injured by said train while so running, the injury will be presumed to have been done through the negligence of the railroad company."

This instruction is almost in the exact language of the statute, and one quite similar to it was given in *Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty,* 67 Ill. 113, and *Illinois Central Railroad Co.* v. *Ashline,* 171 id. 313. The instruction does not direct a verdict, as contended, and, taken in connection with all the others given, we do not think it was so misleading as to constitute reversible error.

The fourth instruction is as follows:

"The jury are instructed that by the laws of this State if a railroad company, by its agents or servants, runs an engine or train of cars in or through the limits of any incorporated city, town or village at a greater rate of speed than is permitted by the ordinance of such city, town or village, then the company is liable for all damage done to the property of any person injured by such engine or train of cars, provided the person injured is exercising due care for his property at the time in question."

The criticism made upon this instruction is, that it fails to state that the unlawful speed of the train must have been the proximate cause of the injury, and that it in express terms declares a fixed and absolute liability. It is doubtless subject to criticism, and standing alone might have been calculated to mislead the jury to the prejudice of the defendant. The second instruction given on behalf of the plaintiff covers the same point, as does also the seventeenth given on behalf of the defendant. The latter tells the jury that although the law presumes that where a train is run at a rate of speed in excess of that fixed by the ordinance, and property is injured, and the injury was the result of negligence on the part of the company, yet such presumption of negligence may be rebutted by the evidence, and if the jury believe that the injury in question was not caused by the train running at a speed in violation of the ordinance, but that the injury was caused by appellee's horses becoming frightened at the train, and that the horses were not frightened by reason of the speed of the train but because they were afraid of a locomotive, then the appellee cannot recover upon the ground, alone, that the train was running at a greater rate of speed than that fixed by the ordinance. This instruction clearly covers the defect complained of in the foregoing fourth given on behalf of appellee.

On behalf of appellant eighteen carefully prepared instructions were given to the jury, which, when considered as a series and in connection with those given at the instance of plaintiff, covered every material question in the case. It can not, we think, be said that the verdict of the jury was in any way the result of misdirection as to the law.

We have endeavored to give careful consideration to each of the numerous points made by counsel for the appellant in their argument urging a reversal of the judgment below, and are convinced no reversible error was committed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*