# George Corelis, Administrator of the Estate of Ellen Corelis, Deceased, Appellee, v. Chicago, Burlington and Quincy Railroad Company, Appellant.

## Gen. No. 7,646.

1. APPEAL AND ERROR—*failure to object to evidence when offered as precluding objection thereto on appeal.* The offer in evidence of a city ordinance regulating railway train speed, although based upon a statute repealed by Cahill's St. ch. 111a, but expressly not objected to by defendant railroad on the trial against it for negligently causing a child's death, cannot be objected to by defendant on its appeal.

2. HARMLESS AND PREJUDICIAL ERROR—*instruction in language of statute stating abstract proposition of law.* An instruction given in words of the statute, although failing to tell the jury that the presumption of negligence stated as arising from certain acts could be rebutted, is not so misleading as to constitute reversible error.

3. INSTRUCTIONS—*cure of error by other instructions.* Any error in an instruction that certain acts are presumed negligent, without in the same instruction stating that such presumption may be rebutted, is cured by the defendant obtaining from the court instructions clearly stating that said presumption is not conclusive.

4. PARENT AND CHILD—*when mother not guilty of negligence contributing to death of child run over by train.* A mother who left her child alone for 15 minutes on the second floor of a house which was surrounded by an iron fence, and who had often told the child not to go upon the railway track which the child had never before done, was not guilty of contributory negligence in the death of the child through being run over by defendant's railway train.

5. RAILROADS—*when contributory negligence of parents of child killed by train question for jury.* Instructions, presented by defendant itself, that the jury should determine whether the parents of a child whom they claimed to have been negligently killed by defendant's train were guilty of contributory negligence, make such contributory negligence a fact question for the jury.

6. TRIAL—*sufficiency of foundation for testimony as to speed of train as question for court.* The court has the duty in the first instance to determine whether the foundation is properly laid for a witness to testify on the speed rate of a train alleged to have been negligently excessive at the time it killed plaintiff's intestate.

Appeal by defendant from the City Court of Moline; the Hon. G. O. Dietz, Judge, presiding. Heard in this court at the April term, 1926. Affirmed. Opinion filed March 22, 1927.

Walker, Sweeney & McNamara and Russell B. James, for appellant; J. A. Connell and J. C. James, of counsel.

Benjamin S. Bell and Edward L. Eagle, for appellee.

Mr. Justice Jett delivered the opinion of the court.

This suit was instituted by George Corelis, administrator of the estate of Ellen Corelis, deceased, appellee, against the Chicago, Burlington and Quincy Railroad Company, appellant, to recover damages alleged to have been sustained by the next of kin of Ellen Corelis, deceased, on account of her death by the negligence of appellant company.

A jury trial was had and a finding in favor of appellee for the sum of $3,750 on which a judgment was rendered and this appeal by appellant followed.

The deceased, Ellen Corelis, was a child six years of age. She resided with George Corelis and Chrisoula Corelis, her parents, together with her brothers and sisters in a 2-story frame building about a block from the tracks of the appellant, in Moline, Illinois. The building in question was occupied by two families. The deceased and her family lived upstairs in said building. The downstairs was occupied by Evageilo Corelis, a widow with six children. The widow above-mentioned is a sister-in-law of George Corelis, the father of the deceased child.

The death of Ellen Corelis was occasioned on the morning of the sixteenth of May, 1924, when she was struck and killed by a westbound passenger train of the Chicago, Burlington and Quincy Railroad Company, consisting of a locomotive and three cars, at about 11

o'clock in the morning, at the intersection of Second Street in the city of Moline with the railroad tracks. The street and railroad tracks form right angles and cross at the grade.

On the day that the child met its death, her father George Corelis, a laborer, was working in a factory about one-half block distant from his home. On the morning in question, the mother was at home performing her household duties and taking care of the three younger children, namely, Ellen, the deceased, John, aged three, and the baby, aged seven months. The two elder children, Catherine and Beulah, were at school. At about 10:30 on said morning the mother went to a grocery store for supplies for the family and left the three children, Ellen, John and Annie, at home upstairs. The 3-year-old boy was playing on the floor, the baby was asleep and Ellen was watching them. The mother told the children to stay in the house. The grocery store to which the mother went was located about four doors west of her home. She was gone about 15 minutes and on her return she was told that Ellen had been run down. It appears that Ellen went out of the house and north on Second Street to the railroad tracks where some men were working with a hand car. She watched them some little time and then went on the tracks. A train coming from the east consisting of an engine and three cars approached the crossing. She was on the south side of the track and started to run north, and was struck by the engine and killed.

The declaration of appellee consists of four counts. The first count charges general negligence; the second, failure to ring a bell or blow a whistle as required by statute; the third, the violation of a city ordinance of Moline regulating the speed of passenger trains; the fourth count charges the negligent operation of the gates. In the third count, it is charged that there was in full force and effect in the city of Moline, on the day that the plaintiff's intestate lost her life, a certain valid

ordinance of said city of Moline pertaining to the operation of trains by railroads in the said city of Moline. Section 1 of the said ordinance was and is in the words and figures, to wit:

"Sec. 1.—RATE OF SPEED—Be it ordained by the City Council of the City of Moline, that no railroad corporation by itself or agents, shall run any passenger train within the limits of said city, at a greater rate of speed than Ten (10) miles per hour, nor any other train, locomotive, engine or car, at a greater rate than Six (6) miles per hour."

No demurrer was filed to the declaration. The defendant pleaded the general issue and the trial resulted as above stated.

A number of errors are assigned for reversal of the judgment. The first error argued by the appellant is that the court erred in giving to the jury, on the part of appellee, Instruction 2, which reads as follows:

"You are instructed that whenever any railroad corporation shall by itself or agents, run any train, locomotive engine or car, at a greater rate of speed in or through the incorporated limits of any city, town or village, than is permitted by any ordinance of such city, town or village, and an injury has been done to persons or property in consequence of running such train in excess of the speed provided by such ordinance, that then such injury shall be presumed to have been done by the negligence of said corporation or its agents."

It is insisted that the instruction is erroneous because it fails to inform the jury that the presumption may be rebutted and that it omits the element of due care and caution on the part of the parents having the custody of the deceased; that it is an abstract proposition of law and that the statute upon which it was based was repealed by the Public Utilities Act, Cahill's St. ch. 111a. The record discloses that appellee, in support of the third count of the declaration, offered in evidence an ordinance of the city of Moline regulating

the speed of trains. When the ordinance was offered counsel for appellant expressly stated that they had no objection. In this condition the record, even though it be insisted that the statute upon which the instruction was based has been superseded by the Public Utilities Act, or by what is now known as the Commerce Commission Act, appellant, by making no objection to the ordinance and expressly stating that there was no objection, is in no position to urge the point that the statute has been repealed by the Utilities Act or the Commerce Commission Act. It is true that the instruction does not tell the jury that the presumption may be rebutted, and it is an abstract proposition of law, but the giving of this instruction has been held not to constitute reversible error.

In *Chicago, B. & Q. Ry. Co. v. Haggerty,* 67 Ill. 113, the same question was raised that is urged in the case before us for consideration. A like instruction was given and the same objection raised as is here. On page 117 the court said:

"The instruction is no doubt somewhat open to the objection made, that it might be understood by the jury that the presumption of negligence, where the killing of the animal took place under the circumstances stated, was conclusive, and not subject to be rebutted by proof of the actual facts to the contrary. Still, the instruction in this respect was given in the language of the statute, and we could hardly pronounce to be error the laying down the law in the words of the law itself."

An instruction substantially the same as the one involved in this cause was sustained in *Dukeman v. Cleveland, C., C. & St. L. R. Co.,* 237 Ill. 104, and at page 111 the court said:

"In *Chicago, Burlington and Quincy Railway Co. v. Haggerty,* 67 Ill. 113, this court had before it an instruction in substantially the same language as the one now under consideration, and while the instruction was criticised by this court it was pointed out that the in-

struction was in the language of the statute, and it was said: 'We can hardly pronounce it to be error the laying down of the law in the words of the law itself.' And again, in the case of *Chicago and Eastern Illinois Railroad Co. v. Crose, supra* (214 Ill. 602), the same instruction was again brought into consideration, and we held, on the authority of the *Haggerty* case and *Illinois Central Railroad Co. v. Ashline,* 171 Ill. 313, that the instruction was not so misleading as to constitute reversible error in view of the other instructions given in the case.''

In *Chicago, B. & Q. Ry. Co. v. Haggerty, supra,* the court uses the following language when discussing the instruction heretofore alluded to:.

''Had defendant's counsel been apprehensive that the jury might be misled by the instruction as to the character of the presumption, he might have asked, on his part, an explanatory instruction to the effect that the presumption was not a conclusive but only a *prima facie* one.''

The appellant met the objection interposed to the instruction complained of by offering, and the court giving, Instructions 9, 11 and 15, which are as follows:.

''9.   The Court further instructs the jury that the burden of proof is upon the plaintiff in this case to show not only negligence on the part of the defendant, but also that the parents or persons having care of the deceased were not guilty of negligence proximately contributing to the accident, and unless the plaintiff has so proven your verdict should be for the defendant.''

''11.   The Court further instructs the jury that the crossing of a railroad track where trains are likely to pass at any time is a place of danger and it is the duty of the parents or other persons having the care and custody of a child of tender years to exercise ordinary care and caution to prevent the child being injured, and the burden is upon the plaintiff in this case to prove the

exercise of such due care of the deceased; and unless
you find from the evidence in this case that they did
exercise such care and caution, then the plaintiff can-
not recover and your verdict should be for the defend-
ant.''

''15.   The Court instructs the jury that the burden
of proof in this case is on the plaintiff and he must
show, or it must appear from the evidence not only
that there was no negligence on the part of the defend-
ant, but he must also show, or it must appear from the
evidence, that the parents or persons having care of
the deceased exercised such care as ordinarily judicious
and careful persons would exercise with reference to a
child of the age of the deceased, and unless you find he
has so proven he is not entitled to a verdict at your
hands, and you should find the defendant not guilty.''

These instructions effectively stated to the jury that
the plaintiff could not recover unless he showed not
only negligence on the part of the defendant but also
that the parents or persons having the care of the child
were not guilty of negligence and clearly show that the
presumption was not a conclusive one.

In reaching the conclusion that we have we are not
unmindful of the rule announced in the *Northern Trust
Co. v. Chicago Rys. Co.*, 318 Ill. 402, and *Village of At-
wood v. Cincinnati, I. & W. R. Co.*, 316 Ill. 425, and the
more recent case of the *City of Witt v. Cleveland, C.,
C. & St. L. Ry. Co.*, 324 Ill. 494, holding that cities are
now without power to enforce speed ordinances. It will
be remembered that the speed ordinance was admitted
in evidence without objection and with the express state-
ment by appellant that it had no objection.   Evidence
was offered by both appellee and appellant bearing
upon the speed of the train that ran the child down.
With such a record appellee was entitled to have an in-
struction based upon the case as laid in the third count.
The law, necessarily, arises out of the facts.   The facts
as shown when this case went to the jury entitled appel-

lee to an instruction basing a right of recovery upon said third count. Furthermore, we are unable to find any objection urged in the court below that would authorize appellant to raise this question in this court. It does not need the citation of authority to support the rule that no questions can be relied upon in the Appellate Court that were not raised in the trial court.

It is next urged by the appellant that the appellee failed to prove due care and caution on the part of the parents for the safety of the deceased. The evidence further shows that in addition to the facts heretofore stated that there was an iron fence around the premises; that the parents had repeatedly warned Ellen and the other children not to go into the streets or near the railroad tracks, and that the children had obeyed them prior to the incident in question.

In *City of Chicago v. Major,* 18 Ill. 349, at pages 360, 361, the court said: "A large majority of children living in cities depend upon the daily labor of both parents for subsistence, and these parents are unable to employ nurses who may keep a constant and vigilant eye momentarily upon their children; and we cannot hold, as a matter of law, that every time a child, four years of age, steps into the street unattended, the mother is guilty of such negligence as would authorize every reckless or careless driver to run over and trample it down with impunity, or as would authorize the city to expose traps and pit-falls in every corner of the streets, in which a child may be drowned or maimed. Such a rule of law ought to depopulate a city of all its laboring inhabitants. In this, as in all other cases, it must be left to the jury to determine whether the parents of the child have been guilty of negligence in suffering the child to be in the streets."

*O'Connell v. Yellow Cab Co.,* 222 Ill. App. 118, was a suit brought to recover for the death of a child six years and five months old, that was run down on a public street in Chicago. The evidence, among other

things, disclosed that at the time the child was run over by a taxicab the father was a locomotive engineer and was at work away from home. The mother was at home and had seen her son playing downstairs about ten minutes before his death; that after talking with him she went upstairs for a few minutes and then came down and called him but he was not there. Immediately afterwards, the mother saw a crowd running towards Thirty-fifth and Western Avenue, and learned that her son had been run over. On cross-examination, the mother testified that she had given her son a dollar bill and a note crumpled together to hold; that she told him to wait for her till she went upstairs to get her boudoir cap and button her shoes, and until she came downstairs. After a statement of the above facts, the court, at page 126, said: "Quite obviously, upon that evidence, the question of sufficient care on the part of the mother was a matter for the jury."

In *West Chicago St. Ry. Co. v. Liderman,* 187 Ill. 463, the court said:

"It is undoubtedly the duty of parents in cities to use reasonable care to guard their children against the known danger to them when allowed to go unattended upon the public streets; but the standard of such care is not capable of being defined by the law, and each case must depend upon its own facts and circumstances. That it is not negligence *per se* to permit infants to be upon the streets of a city was held by this court in *City of Chicago v. Major,* 18 Ill. 349.'' To same effect are: *Chicago & A. R. Co. v. Logue,* 158 Ill. 621; *City of Chicago v. Hesing,* 83 Ill. 204; *Illinois Cent. R. Co. v. Warriner,* 229 Ill. 93; *Livingston v. Blind,* 138 Ill. App. 494.

In view of the facts as disclosed by this record, we are not prepared to hold that the parents of the child were guilty of contributory negligence. Furthermore, it was a question of fact for the jury to determine as to whether or not the parents were guilty of contributory

negligence. This question was squarely presented to the jury in said Instructions 9, 11 and 15, given on the part of appellant.

It is also insisted that the court improperly permitted a certain witness to testify to his judgment as to the rate of speed of the train, without a foundation having been laid therefor. The question in the first instance was a question for the court to determine. The witness testified to his experience and we do not think that it can be seriously argued that the foundation was not sufficient and that the admission of his evidence was erroneous.

We conclude, therefore, that the judgment of the city court of the city of Moline should be affirmed, which is accordingly done.

*Judgment affirmed.*