Alice Brundege, Administratrix of the Estate of Melvin J. Brundege, Deceased, Appellee, v. Chicago, Burlington & Quincy Railroad Company, Appellant.

## Gen. No. 7,746.

1. MASTER AND SERVANT—*violations of speed ordinance as negligence.* A right to recover for the death of a railroad employee struck by a train cannot be based merely upon the operation of the train at a speed in violation of a city ordinance.

2. MASTER AND SERVANT—*whether railway servant killed handling mail was in interstate commerce as jury question.* Whether a railway servant, whose general duties as mail handler would engage him in interstate commerce, was so engaged at the time of his death from his master's train, held a question for the jury.

3. MASTER AND SERVANT—*negligence from speed of train as question for jury.* Whether a railroad company was negligent in its duty to a station employee in operating a train at a speed of from 35 to 40 miles an hour in a village, held a question for the jury.

4. MASTER AND SERVANT—*assumption of risk as a defense under the Federal Employers' Liability Act.* A railroad may avail itself of assumption of risk as a defense to an action under the Federal Em-

ployers' Liability Act for causing the death of a servant in so far as the risk is usual, ordinary, and remains incident to the employment after the master takes reasonable care to prevent or remove it, or, though extraordinary, is so obvious and exposes the servant to such imminent danger that an ordinarily prudent man would anticipate injury as so probable that he would not enter or remain in such employment.

5. MASTER AND SERVANT—*Federal Employers' Liability Act as superseding State laws.* The Federal Employers' Liability Act of 1908 superseded all State laws on the subject of an interstate employer's liability.

6. MASTER AND SERVANT—*defense of assumed risk as jury question.* A verdict should not be directed for a railroad company if there is any evidence in an action for the death of a servant engaged in interstate commerce showing if true, together with inferences reasonably drawn therefrom, that the risk relied on as a defense was not assumed by the decedent.

Appeal by defendant from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the October term, 1926. Reversed and remanded. Opinion filed September 24, 1927.

CAIRO A. TRIMBLE and PERRY D. TRIMBLE, for appellant; J. A. CONNELL, of counsel.

L. A. ZEARING and J. L. SPAULDING, for appellee; GEORGE W. HUNT, of counsel.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action was instituted by appellee against appellant in the circuit court of Bureau county under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321, to recover damages for the death of Melvin J. Brundege, who was struck and killed by one of appellant's trains at its Fifth Avenue Station, LaGrange, Illinois, on January 24, 1925.

The declaration consisted of eight counts, the sixth count of which was by the court withdrawn from the consideration of the jury. All of the counts charged that both appellee's intestate and appellant railroad

company were engaged in interstate commerce at the time Brundege was struck and killed.

The first and second counts charge in substance that appellee's intestate, while assisting in interstate commerce by carrying United States mail from the railroad's mail trains to its depot, was struck and killed by one of appellant's trains which was being carelessly and negligently operated at a high and dangerous rate of speed. The third count charges a failure to provide appellee's intestate with a safe place to work. The fourth and fifth counts are in substance the same as the first and second, except that they also charge a failure to sufficiently warn appellee's intestate so as to enable him to get off the tracks of appellant's railroad to a place of safety. The seventh and eighth counts were based on an ordinance of the village of LaGrange, which provided that trains should not be operated through said village at a speed greater than 10 miles per hour, and charged that appellant's train which struck and killed appellee's intestate was being operated at, to wit, 50 miles per hour. All of said counts allege that said deceased left him surviving a widow and minor son.

To said declaration a plea of the general issue was filed. A trial was had, resulting in a verdict and judgment in favor of appellee for the sum of $15,000. To reverse said judgment, this appeal is prosecuted.

Melvin Brundege, appellee's intestate, was assigned to duty at LaGrange, Illinois. Arriving there January 23rd, about 12:30 p. m., he reported to Walter A. Hunter, the agent in charge of appellant's station, and was told by him that "he was to handle the mail and baggage, deliver Western Union telegrams, sweep out office and waiting rooms, and make himself generally useful." Hunter, as a witness for appellee, further stated that he "sent Mr. Brundege around with his predecessor who was performing these duties, to show Brundege what and where his job was"; that he "cau-

tioned him about the fast train that came in about 6:38 or 6:40 in the morning, going east, and cautioned him about the fast trains using the running tracks and other trains running very thickly at that hour; to be cautious about crossing the tracks.'' He further stated: ''I told him No. 8 was due at 6:38, and to look out when he went to meet the 6:40 train, in crossing the tracks, and to be sure to look in both directions before crossing the tracks.''

Brundege reported for work on the next day, January 24, at 6:30 a. m., and while crossing the tracks at Fifth Avenue about 6:40 a. m., was struck and killed by eastbound train No. 8, which, the testimony shows, was being operated at from 35 to 40 miles per hour through said village.

At the close of appellee's evidence, and again at the close of all the evidence, motions were made by appellant to exclude the evidence and to direct a verdict in its favor, which motions were denied. Thereupon appellant entered a motion to exclude the evidence and to direct a verdict of not guilty as to the seventh and eighth counts of said declaration. These motions were also denied.

Under the holding of our Supreme Court in *Village of Atwood v. Cincinnati, I. & W. R. Co.*, 316 Ill. 425–435; *Northern Trust Co. v. Chicago Rys. Co.*, 318 Ill. 402–412; *City of Witt v. Cleveland, C., C. & St. L. R. Co.*, 324 Ill. 494, we are of the opinion and hold that the court erred in refusing said motions. Counsel for appellee concede that under the holding of these cases, unless the Supreme Court should reverse itself or modify its holding no right of recovery can be based on the violation of the provisions of said ordinance as such.

The language and reasoning of the court in the three cases mentioned is so final and conclusive on the subject of the regulation of public utilities by the now Illinois Commerce Commission that it is not necessary

for us to discuss the same. The language used by the court in those cases is a complete answer to the argument here made by counsel for appellee, asking the Supreme Court to reverse its holding in those cases. Appellant prayed an appeal from said judgment to the Supreme Court, upon the trial judge certifying that the validity of said ordinance should be passed on by the Supreme Court. That court having transferred said cause to this court, in effect, held against appellant on said proposition.

For the refusal to direct a verdict on counts seven and eight, this judgment must be reversed and the cause remanded. Inasmuch as appellant urges a reversal on other alleged errors which are likely to arise on another trial, we deem it our duty to pass on these also.

It is seriously contended by counsel for appellant that the record fails to disclose that appellee's intestate, just prior to and at the time of the injury which caused his death, was engaged in interstate commerce.

The general duties of Brundege, as detailed by the witness Hunter, were of a character that would engage him in interstate commerce, and, under the holding of the Supreme Court in *Cleveland, C., C. & St. L. R. Co. v. Industrial Commission,* 294 Ill. 374, where the court had before it the question as to whether an employee of a railroad company, who was handling the mails in much the same manner as appellee's intestate was to handle the same, was engaged in interstate commerce, we hold that it was a question for the jury under the instructions of the court, as to whether appellee's intestate was so engaged. The court therefore did not err in refusing to direct a verdict on that ground.

It is next contended that the evidence failed to sustain the allegation as to the negligence of appellant. We are of the opinion and hold that, without reference to said ordinance, it was a question for the jury as to

whether or not the operation of appellant's train through said village at a speed of from 35 to 40 miles per hour, under the circumstances disclosed by the evidence in this case, was negligent. In making this holding, we do so in view of the duty of appellant railroad company to appellee's intestate, and not of its duty towards the public generally.

It is next contended by appellant that the record clearly discloses that appellee's intestate, under the Federal Employers' Liability Act, assumed the dangers incident to his employment, and that therefore there can be no recovery in this case.

The defense of assumption of risk is unquestionably available to the employer in suits of this character, brought under the Federal Employers' Liability Act. *Boldt v. Pennsylvania R. Co.*, 245 U. S. 441–445, and cases there cited. While this is true, it is also the law that an employee under said act does not assume "all the risks incident to his employment, but only to such as are usual, ordinary, and remain so incident after the master has taken reasonable care to prevent or remove them, or if extraordinary, such as are so obvious and expose him to danger so imminent that an ordinarily prudent and careful man would anticipate injury as so probable that in view of it he would not enter upon or remain in the employment." *Chicago & A. R. Co. v. House*, 172 Ill. 601–605. To the same effect, but stated in a little different language, are *Chesapeake & O. Ry. Co. v. Proffitt*, 241 U. S. 462–468; *Chesapeake & O. Ry. Co. v. De Atley*, 241 U. S. 310–315–317; *Kanawha & M. Ry. Co. v. Kerse*, 239 U. S. 576–581 (holding deceased's knowledge of the conditions important); *Boldt v. Pennsylvania R. Co., supra; Seaboard Air Line Ry. v. Horton*, 233 U. S. 492–504.

Since Congress took over the matter of the interstate employers' liability, by the passage in 1908 of the Federal Employers' Liability Act, all State laws upon the subject were superseded. *Second Employers'*

*Liability Cases (Mondou v. New York, N. Y. & H. R. Co.)*, 223 U. S. 1–55, 1 N. C. C. A. 875.

Without going into a detailed discussion of the evidence in this case, it is only necessary to say that if there is any evidence in the record from which, taken as true, with all reasonable inferences to be drawn therefrom, it can fairly be said that the risk in question was one which appellee's intestate did not assume, then the court did not err in refusing to direct a verdict on this issue.

While the record discloses that the crossing gates at Fifth Avenue were down, and while the evidence is to the effect that the whistle was sounded on the fast train in question, and while the towerman testified that he rang his bell to warn appellee's intestate, still we are not able to say, under the holding of the United States Supreme Court in the cases cited, as to what may be taken into consideration by the jury in determining whether there was an assumption of risk by an employee, and in view of the evidence as to the speed of said train, the location of tracks, time of day, knowledge of conditions by appellee's intestate, and all the other facts surrounding the situation in question, that there was no evidence in the record which, taken as true with all reasonable inferences to be drawn therefrom, would fairly tend to prove that this was a risk which appellee's intestate should be held not to have assumed. This being true, the court did not err in failing to direct a verdict for appellant on that ground.

It is next contended by appellant that the court erred in giving instruction No. 3 given on behalf of appellee, and instruction No. 14 given by the court on its own motion.

Both of these instructions were based on the ordinance in question, and for the reasons heretofore stated, it was error for the court to give the same.

It is next contended that the court erred in refusing

to give instructions Nos. 25, 26, 31 and 32, offered by appellant.

Instruction 25 stated a correct principle of law, and should have been given, as it is not in terms covered by any of the other instructions given. It was urged against appellant's instruction 26 that it particularizes certain of the evidence. We do not think this point is well taken. Rather, it refers to one of the issues to be determined by the jury, and should have been given. Instruction 31 and 32 state correct principles of law applicable to the facts in this case. Counsel for appellee practically concede this, but insist that the same are covered by instruction 14. As we have held instruction 14 erroneous for being based on said ordinance, it follows that instructions 31 and 32 should have been given.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*