# Ethel Chester, Administratrix of the Estate of Alvin Burchard Chester, Deceased, Appellant, v. Chicago, Burlington & Quincy Railroad Company, Appellee.

## Gen. No. 7,780.

1. PLEADING—*exclusion of count not supported by evidence.* It is proper to exclude from the jury at the end of the evidence a count which is not supported by any evidence.

2. HARMLESS AND PREJUDICIAL ERRORS—*questioning witness whether he was receiving pay.* Refusal to permit a witness to answer a question whether he was receiving pay was not reversible error.

3. EXAMINATION OF WITNESSES—*improper test of recollection and accuracy of witness.* The recollection of a witness and the accuracy of his statements are improperly tested on cross-examination by a question as to whether or not his recollection was as clear upon one subject as it was upon another.

4. MOTOR VEHICLES—*instruction in collision case based on invalid ordinance limiting speed of railroad trains.* In an action for damages resulting from the collision of an automobile with a railroad engine at a village crossing, an instruction for plaintiff based upon an ordinance limiting the speed of trains is properly refused, since such regulatory power is now exclusively vested in the commerce commission.

5. NEGLIGENCE—*instruction defining contributory negligence as used in instructions when no instruction uses that term.* An instruction correctly defining the term contributory negligence "as used in these instructions" is not objectionable, although said term is nowhere found in any of the instructions granted, where contributory negligence is an issue in the case.

6. MOTOR VEHICLES—*liability of railroad company from mere fact engine strikes automobile.* The mere fact that a railroad engine struck the automobile which the deceased was driving at a village crossing does not render the railway company liable to respond in damages.

7. NEGLIGENCE—*burden of proof.* The burden is upon the plaintiff to prove by the greater weight of the evidence every fact necessary to establish a liability on the part of the defendant before there can be a recovery, and the burden is not upon the defendant to prove that he is not liable.

8. MOTOR VEHICLES—*objection to instruction as singling out facts.* In an action for damages resulting from an automobile colliding with a railroad engine at a village crossing, an instruction that the mere fact

that defendant's cars struck the automobile does not render the company liable, and also stating the rule of the burden of proof, is not objectionable as singling out a particular fact or facts.

9. STATUTES—*statute giving cities right to regulate speed of carriers as not repealing by implication statute giving exclusive right to commerce commission.* Cahill's St. ch. 24, ¶ 65, subd. 21, giving municipalities the power to regulate the speed of common carriers within their limits, does not repeal by implication Cahill's St. ch. 111a, ¶ 76, under which the commerce commission has exclusive power in such matters.

Appeal by plaintiff from the Circuit Court of Du Page county; the Hon. WILLIAM J. FULTON, Judge, presiding. Heard in this court at the April term, 1927. Affirmed. Opinion filed February 6, 1928.

·VAIL, ROE & PLAMONDON, for appellant.

ALSCHULER, PUTNAM, FLANNIGEN & JOHNSON, for appellee; J. C. JAMES, of counsel.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This suit was instituted by Ethel Chester, administratrix of the estate of Alvin Burchard Chester, deceased, appellant, against the Chicago, Burlington and Quincy Railroad Company, appellee, to recover damages alleged to have been sustained by the next of kin of the said Alvin Burchard Chester, deceased, on account of his death by the negligence of appellee company at a railroad crossing.

For the purposes of this opinion the appellant will be called plaintiff and the appellee, defendant.

The amended declaration upon which the case was tried consists of 13 counts and negligence is charged on the part of the defendant company in the operation of its train which struck the car in which the decedent was riding; the failure to comply with the statutory requirements in the ringing of a bell or the sounding of a whistle; in failing to have a gateman on duty to lower the gates at the crossing; in that its watchman on duty failed to warn decedent of the approaching

train; in failing to have its watchman at the center of the intersection before the arrival of the train; in operating its train in excess of the 20-mile speed ordinance of the village of Downer's Grove; in failing to comply with the village ordinance in relation to the operation of its gates; in failing to show a conspicuous light on the engine hauling the train; wanton and wilful negligence in operating its train at a high and unlawful rate of speed and wanton and wilful negligence in failing to warn decedent of the approaching train; and wanton and wilful negligence in failing to operate its train carefully and warn decedent of the approach of the train.

To the declaration the defendant pleaded the general issue. A trial was had and the jury returned a verdict for the defendant and this appeal followed.

The record discloses that the deceased was of the age of 17 years; that on the morning of December 27, 1925, around the hour of 5:30 o'clock he went to the place of business of his employer for whom he was working in the delivering of papers; he had his breakfast and went to a garage to get the car he used in his work; the garage was on the corner of Warren avenue and Main street in the village of Downer's Grove, a village of some eight thousand population. The main street of said village crosses the tracks of the defendant at right angles. The decedent took the car out of the garage at about the hour of six o'clock. Shortly thereafter he drove the car down the main street in said village. He approached the crossing from the north. As the decedent attempted to cross the tracks of the defendant company the car which he was driving was struck by a train of the defendant and he lost his life.

It is the contention of the plaintiff that the verdict of the jury is against the weight of the evidence; that the court erred in overruling objections of the plaintiff to certain testimony offered by the defendant; that the

court erred in refusing certain instructions requested by appellant relating to the wanton counts of the declaration and the effect of the speed ordinances of the village, and in giving certain instructions for the defendant; and in dismissing certain counts from the declaration.

On the trial of the cause the appellant introduced evidence tending to prove that the engine which struck the automobile in which the decedent was riding was running at the rate of 45 miles per hour; that the accident happened at about six-twenty in the morning at just about daylight; that there were gates at the crossing and that these gates were up; that the automobile which the decedent was driving was coming from the north and that there were three main line tracks which passed over the highway at the crossing; that the train was running on the middle track, approaching from the west; that there was a flagman on the crossing; that the whistle on the locomotive was blown as it approached the crossing, two long and two short blasts; that the watchman or flagman was running east toward the center of the street with a stop sign in his hand, holding it up as a sign and shouting to the driver of the approaching automobile, and that at the time the decedent was some 30 feet north of and approaching the watchman on the crossing there was a clear view from the west so that one looking could see an approaching train for a distance of about one-fourth mile; that the light from the approaching train which struck decedent lit up the crossing some time before the train approached it.

On the part of the defendant evidence was introduced tending to prove that from a point 40 feet north of the middle track one on the crossing could see about a mile to the west, and that from a point 50 feet north of the middle track one on the crossing could see an approaching train for a distance of three-fourths of a mile; that from a point 60 feet north of the middle

track looking toward the west there is nothing to obstruct the view; that the bell on the engine was ringing and the whistle blowing; that there was an electric headlight on the engine which was burning, and that the light was bright enough to enable an engineer to see an object about the size of a man 1,500 feet ahead of the engine; that there was a crossing flagman on the crossing; that he saw deceased coming while he was some distance north of the crossing before he turned into Main street, the street which crosses the railroad; that he had a stop sign in his hand, held it up, shook it and hollered to the driver of the automobile to stop but that the driver kept on coming; that the driver did not slacken his speed, but just before reaching the track on which the engine was coming turned toward the east; that when he first waved the stop sign at decedent he was approximately a distance of 90 feet from him; that he had a whistle which he used to warn people passing over the crossing and that he blew the whistle to warn deceased before displaying the stop sign.

We have examined the record to ascertain the facts of this unfortunate incident and after having done so we are not prepared to say that the verdict of the jury is manifestly against the weight of the evidence.

It is argued that the court erred at the conclusion of the evidence in excluding counts 12 and 13 from the consideration of the jury. Both of said counts are wanton counts. Count 12 charges that defendant wilfully and wantonly failed to warn the deceased of the approach of the engine which struck the automobile he was driving. The record discloses that during the progress of the trial counsel for plaintiff admitted that the bell on the engine was ringing, the evidence shows that the whistle was sounded and the bell ringing on the approaching train and in view of these facts the court did not commit any error in excluding from the

consideration of the jury the twelfth count of the declaration.

The record also discloses that the plaintiff voluntarily dismissed out of the case count two which charged a failure to ring a bell or sound a whistle on the approaching engine because he was of the opinion that the bell was rung. What has been said relative to count 12 applies also to count 13. Count 11 charges wilfulness and wantonness in operating the train at a high rate of speed. Count 11 remained in the declaration when the cause was submitted to the jury.

It is earnestly insisted by the plaintiff that the court permitted the witnesses Kleinfeldt and Johnson to testify to conclusion of fact. We have examined the record in this respect and read the questions put to the witnesses and the answers made by them and we are of the opinion that there is no foundation for the contention of appellant. The ruling of the court did not constitute any reversible error.

Complaint is made of the action of the court in not permitting the witness Johnson to state whether or not he was receiving pay. We think the court should have permitted the witness to answer the question but no reversible error was committed in the refusal. The court properly sustained an objection of the defendant to the question asked of Johnson as to whether or not his recollection was as clear upon one subject as it was upon others. The rule is that counsel upon cross-examination has a right to test the recollection of a witness and the accuracy of his statements but questions of the character here presented are not calculated to answer such test.

It is next urged that the court erred in refusing instruction number one offered by the plaintiff. This instruction told the jury that the decedent was entitled to assume that the rate of speed of the approaching train of the defendant company did not exceed the limit of 20 miles an hour prescribed by the ordinance

of the village of Downer's Grove and to operate the automobile which he was driving on the basis of that assumption in the absence of any evidence that deceased knew that the approaching train was running at a rate of speed in excess of 20 miles an hour. This instruction is based on the ordinance of Downer's Grove limiting the rate of speed of trains. Under the holdings of this court in *Corelis v. Chicago, B. & Q. R. Co.*, 244 Ill. App. 47–53, and *Brundege v. Chicago, B. & Q. R. Co.*, 245 Ill. App. 440–443, cities and villages are now without power to enforce speed ordinances. In the case of the *City of Witt v. Cleveland, C., C. & St. L. Ry. Co.*, 324 Ill. 494, the court held that the legislature has taken from cities and villages the power to enact or enforce an ordinance regulating the speed and operation of railroad trains. Under the rule as we understand it the court committed no error in refusing plaintiff's instruction number one.

Refused instruction number two of plaintiff, complained of, was also based on the speed ordinance of the village of Downer's Grove. What we have said relative to refused instruction number one equally applies to refused instruction number two offered by the plaintiff.

Plaintiff insists that the court erred in giving instruction number six on the part of the defendant. It is insisted that instruction six is erroneous in that it commented upon the term "contributory negligence" as used in the instructions and said term is nowhere found in any of the instructions given. Instruction six reads:

"The court further instructs the jury that the term 'contributory negligence' as used in these instructions, with reference to the conduct of the deceased, means the lack of that degree of care contributing to cause the injury which persons of like age, capacity and experience might be reasonably expected to natu-

rally or ordinarily use in the same situation and under like circumstances.

"You are further instructed that the term 'negligence' as used in these instructions with reference to the conduct of deceased means the failure to exercise that degree of care and caution which persons of like age, capacity and experience might reasonably be expected to naturally and ordinarily use in the same situation and under like circumstances."

Although the term "contributory negligence" was not used in any other instruction yet under the issues in this cause the court properly instructed the jury as to the definition of the term "contributory negligence."

It is also insisted that error was committed in giving defendant's instruction number seven. It is as follows:

"The court instructs the jury that the mere fact that the defendant's cars struck the automobile, which the deceased was driving, does not render defendant liable to respond in damages.

"The burden is not upon the defendant to prove that it is not liable in this case. The burden is upon the plaintiff to prove by the greater weight of the evidence every fact necessary to establish a liability on the part of the defendant before there can be a recovery in this case."

The objections made by the appellant to appellee's given instruction number seven are not tenable either because it inaccurately states the substantive law or that it singles out a particular fact or facts.

It is argued by plaintiff that the speed ordinance admitted in evidence is a valid exercise of the powers of the village by virtue of the act of the legislature of June 30, 1925. Sessions Laws of 1925, page 228–229, Cahill's St. ch. 24, ¶ 65, subd. 21. By said act cities and villages were given the following powers: "To regulate the speed of horses and other animals, vehicles, cars and locomotives within the limits of the corpora-

tion.'' The Act of June 30, 1925, was passed prior to the decision in *City of Witt v. Chicago, C., C. & St. L. Ry. Co.*, 324 Ill. 494. The opinion in this cause was filed February 16, 1927. The court construed the Public Utilities Act of June 29, 1921, and in doing so among other things said: .

''While prior to January 1, 1914, cities in this State had power to pass ordinances regulating the speed of trains while passing through such cities, the General Assembly by the passage of 'An act to provide for the regulation of public utilities,' approved June 30, 1913, in force January 1, 1914, created the Public Utilities Commission, and by 'an act concerning public utilities,' approved June 29, 1921, in force July 1, 1921, (Laws of 1921, p. 702,) created the Commerce Commission and vested it with general supervision of all public utilities, including the power, by general or special orders, rules or regulations, or otherwise, to require every public utility to maintain and operate its plant, equipment or other property in such manner as to promote and safeguard the health and safety of its employees, passengers, customers and the public, and to this end to require the performance of any act which the health or safety of its employees, passengers, customers or the public may demand. (Laws of 1921, sec. 57, p. 733.) By this act the General Assembly, in its discretion, withdrew from cities and villages the power theretofore exercised by them with reference to the speed and operation of railway trains and such power is now vested in the Commerce Commission, another agency of the government. *Village of Atwood v. Cincinnati, Indianapolis and Western Railroad Co.*, 316 Ill. 425; *Northern Trust Co. v. Chicago Railways Co.*, 318 Id. 402.''

From the language used by the court it will be observed that the power contended for by the plaintiff by virtue of the Act of June 30, 1925, was vested in the commerce commission, another agency of the State

and was withdrawn from cities and villages. Moreover, we have seen that the Public Utilities Act, Cahill's St. ch. 111a, as it now exists was approved June 29, 1921, and became effective July 1, 1921. The day after this act was approved an amendatory act to the Cities and Villages Act was approved which went into force on July 1, 1921, the same date as the Public Utilities Act. One of the provisions of this amendatory act, being subdivision 21 of paragraph 65 of article 5 of the Cities and Villages Act, Cahill's St. ch. 24, ¶ 65, subd. 21, was as follows:

"To regulate the speed of horses and other animals, vehicles, cars and locomotives within the limits of the corporation."

This amendment to the Cities and Villages Act which went in force on July 1, 1921, is in the same language as the amendment relied upon by the plaintiff as adopted by the legislature in 1925.

The attention of the Supreme Court was called to the amendatory act adopted in 1921 when the *City of Witt* case was before it. We are, therefore, not prepared to say that the Act of June 30, 1925, Cahill's St. ch. 24, ¶ 65, subd. 21, as is insisted by the plaintiff, repealed by implication section 57 of the Act of June 29, 1921, Cahill's St. ch. 111a, ¶ 76, being the Utilities Act, in view of what was said in the *City of Witt* case.

We have reached the above conclusion notwithstanding the fact that the ordinance in question relied upon by the plaintiff was past and became effective in September, 1925.

We conclude that no reversible error was committed by the trial court and the judgment of the circuit court of DuPage county will be affirmed.

*Judgment affirmed.*