Julius J. Janelunas, Appellee, v. Chicago Fraternal Life Association, Appellant.

Gen. No. 38,805.

Opinion filed June 29, 1936. Rehearing denied July 10, 1936.

GEORGE C. GEIER, of Chicago, and WILLIAM A. L. PELLICORE, for appellant.

WALTER F. DODD and EARL J. WALKER, both of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff, the beneficiary of a certificate for $2,000 issued by defendant September 1, 1930, to plaintiff's mother, brought an action against defendant to recover the face of the certificate. There was a verdict and judgment in plaintiff's favor for $2,460, being the face of the certificate with interest, and defendant appeals.

The record discloses that on August 27, 1930, Johanna Janelunas, plaintiff's mother, made a written application for a beneficial membership in defendant association. She was examined by a physician and on September 1, 1930, defendant issued to her its certificate whereby she was acknowledged to be a member of the association and entitled to such rights and privileges as were provided in its constitution and laws, upon condition that the certificate, articles of incorporation, constitution and laws, the statements made in her application for membership and the statements made by her to the medical examiner should constitute the contract between her and defendant association; and on these conditions it promised to bind itself to pay her son, Julius J. Janelunas, $2,000 upon satisfactory evidence of the death of his mother provided she was in good standing at the time of her death. She died January 9, 1931, and the defense interposed was that in her application she had (1) falsely and incorrectly stated her age in that she stated she was born in 1871, while the evidence shows she was born in 1876, and (2) that she had falsely and incorrectly stated in her application for membership that she had never been rejected "by any other insurance company"; that the statements made by her were warranties, and the certificate was therefore void.

The evidence shows that Mrs. Janelunas was born in Lithuania; that she could not read or write the English language and could speak but very little English; that the application in the record purports to be signed by her by her cross. In the application it is stated, "I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue statements made therein, or to the Medical Examiner, or any concealment of facts by me in this application . . . shall forfeit the rights of myself, my family and dependents to all benefits and privileges therein." In the document in the record

purporting to be the report of the medical examiner, it is stated, "for the purpose of securing beneficial membership in the Chicago Fraternal Association, do hereby expressly warrant the truthfulness of all the statements made by me herein, and of each statement and answer made by me to the questions in my Medical Examination, . . . and I do hereby consent and agree that each and all of said statements and answers shall form the basis of my membership in said Society and that any untrue or fraudulent statement or statements, or concealment or suppression of facts by me, whether they are material or not in my application for membership, my medical examination, or made to the Medical Examiner, . . . shall forfeit all rights, . . . benefit and privileges of myself, . . . or beneficiaries named in any benefit certificate which may be issued from this agreement and application. . . . I hereby warrant the truthfulness of all the answers given to the above questions."

In the benefit certificate it was stated the insured, "is a member of said Society, and is entitled to such rights and privileges in the Society as are provided by its constitution and laws, upon condition that this Benefit Certificate, the articles of incorporation of the Society, the constitution and laws thereof, the statements made in the application for membership and the statements made to the Medical Examiner . . . shall constitute the contract between the member and the Society."

Section 250 of the by-laws which was introduced in evidence by defendant on the trial provides: "If it shall appear that a member has made a mistake in giving his age at the time of admission, he shall make a written statement of the facts to the Supreme Secretary, and if satisfied that no fraud was intended, the age and payments of the member shall be corrected. . . . If he reported his age older than he was at the time of admission, the difference between what he paid

and the amount due for his correct age shall be refunded to him, and he shall thereafter be rated at his correct age. . . . If understated, and not corrected, the member, or in case of his death, his beneficiary . . . shall be entitled only to the amount of benefit which the sum paid would have purchased at his correct age if eligible in this Society.''

On the trial the documentary evidence tended to show that Mrs. Janelunas was born in 1867 or 1869, 1871 or 1876, but it is conceded by counsel for defendant in their brief that, ''We will grant for the purpose of argument that the plaintiff has satisfactorily proven the correct date of the applicant's birth to be June 23, 1876.'' The by-laws provided that no one over 59 years of age was eligible for membership, but the purported application which is in the record, wherein the date of the applicant's birth is stated to be June 23, 1871, would show that at that time she was 59 years, two months and four days of age and therefore ineligible, which facts obviously were known to defendant. But it being admitted that the applicant was born June 23, 1876, she was eligible for membership, and the only effect of giving the wrong age, if such were the fact, would be to vary the amount recoverable in case of her death, as provided by section 250 of the by-laws above quoted.

It is obvious that neither the applicant nor the defendant understood that the applicant was warranting the statements made by her in her application and in her answers to the medical examiner, because if they were technical warranties the certificate would be void, as expressly stated in the application and in the medical report. In the medical examination she was asked whether she ever had any of 67 specific diseases or ailments. It is obvious that defendant knew Mrs. Janelunas could not truthfully answer these questions, and it also knew that no one, not even the most skilful

physician, after a most searching examination, would be able to discover whether she had ever had any of these diseases or ailments. Obviously, it would be unreasonable to say the applicant and the defendant both understood that she was warranting the truthfulness of her answers. *Minnesota Life Ins. Co. v. Link,* 230 Ill. 273; *Moulor v. American Life Ins. Co.,* 111 U. S. 335; *Globe Mut. Life Ins. Ass'n v. Wagner,* 188 Ill. 133. This is clearly shown by the fact that section 250 of the by-laws provides, not that the certificate should be void in case the applicant did not state her age correctly, but that in case of death the amount recoverable by the beneficiary would be based upon the correct age of the applicant.

A reading of (1) the benefit certificate, (2) the constitution and laws, (3) statements made by the applicant in her application, and (4) statements made by her to the medical examiner (which constitute the contract between the parties) taken in connection with the by-laws, clearly shows that the statements made by the applicant, although stated to be warranties, were understood and intended by the parties to be mere representations, and if they were not literally true the question of the good faith of the applicant in making her answers was for the jury. *Joseph v. New York Life Ins. Co.,* 219 Ill. App. 452; *Minn. Mut. Life Ins. Co. v. Link,* 230 Ill. 273; *Moulor v. American Life Ins. Co.,* 111 U. S. 335; *Globe Mut. Life Ins. Ass'n v. Wagner,* 188 Ill. 133.

Defendant further contends the evidence shows that the applicant, prior to the time she applied for membership in defendant association, made application to an insurance company and had been rejected, although the applicant stated to the examining physician of defendant association that prior to that time no physician had given an unfavorable opinion as to her health with reference to life insurance; that this answer was mate-

rial and was false. Dr. Redman, called by defendant, testified he was a physician and surgeon, and in 1928 examined Mrs. Janelunas for the Western and Southern Insurance Co., and rejected her on account of an irregular heartbeat. On cross-examination the doctor testified he did not tell Mrs. Janelunas anything about what he found—"it is not my business to."

Since we hold that the statements made by Mrs. Janelunas were representations and not warranties, the question of good faith—whether she had misrepresented that she had not been rejected by an insurance company—was for the jury.

The clerk has erroneously inserted in the common law record documents which he designates as instructions "refused" and instructions "given," but at whose instance they were submitted does not appear. Nor is it anywhere stated that such instructions were all the instructions offered, given, or refused. The proper place for instructions under the Civil Practice Act, is in the report of the proceedings on the trial and not in the common law record. No question based on the instructions is saved. But if we assume the court instructed the jury, as counsel for defendant contends, that if they believed from the evidence that Mrs. Janelunas had, prior to the time she applied for the certificate, made application to some other insurance society and was rejected and that she intentionally failed to disclose such facts in her application to defendant association, the verdict of the jury should be for the defendant, then we would not disturb the verdict.

Defendant contends this instruction was clearly wrong, and in support of this the case of *Helman v. Royal Neighbors,* 207 Ill. App. 574, is cited and the opinion quoted from to the effect that if the answers to questions in the application for benefit insurance were warranties made a part of the contract, and were false in any particular, such falsities would void the policy whether material to the risk or not, however in-

nocently made, and that it would not be necessary for defendant to prove that such answers were wilfully and intentionally false, that they were relied upon by defendant, or were material to the issuance of the policy.

Since we have held that the answers made by the applicant were not warranties and were not intended to be such by the parties to the contract, the argument fails.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.