Earl L. Miller, William H. Quirk and John Glas, Appellants, v. Jack Dana Green, Appellee.

Gen. No. 45,450.

Opinion filed December 18, 1951. Released for publication January 22, 1952.

MILLER & Moss, of Chicago, for appellants.

CLAUSEN, HIRSH & MILLER, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiffs appeal from a verdict and judgment of not guilty in a suit for personal injuries. The principal error relied upon is that the verdict was against the manifest weight of the evidence. The injuries resulted from a collision between an automobile driven by plaintiff Quirk in an easterly direction on Montrose avenue and an automobile driven by defendant north on Kimball avenue at 3:00 o'clock a. m., on March 14, 1948. The three plaintiffs are police officers who were on duty on the night in question, checking taverns to determine whether they were kept open after the hour permitted by law. For this purpose, plaintiff Quirk was using his car. Defendant, a motorman employed by the Chicago Surface Lines, was on his way home.

The intersection in question is controlled by traffic lights.

Plaintiffs say that they waited at the crossing until they had the green light and then started driving carefully across; that defendant drove his car through the red light at an excessive rate of speed; that plaintiffs' automobile was struck by the front of defendant's vehicle; that defendant was drunk and when he got out of his car after the accident, used violent and abusive language and kicked one plaintiff, Earl L. Miller, while he was lying unconscious. Defendant's story is that he was traveling between 20 and 25 miles per hour; that as he approached the intersection, the light for northbound traffic was green and when his car reached the south crosswalk of Montrose avenue, the light changed from green to amber and he proceeded across Montrose avenue, but plaintiffs carelessly drove their car into the intersection and struck his car.

██ As is to be expected in this type of accident where events all take place within a few seconds, there is a sharp conflict among plaintiffs' own witnesses, many inconsistencies, and some impeachment. There is even some contradiction among plaintiffs' witnesses as to whether there was an intermediate amber light between the red and green at this crossing. On the question of his sobriety, defendant testified that prior to the collision he had one glass of beer and one shot of whiskey; that as a result of the accident he struck his head hard against some part of the car, which accounted for his unsteadiness. No charge was made by the police officers against defendant for operating a car while drunk. Defendant's case is strongly supported by a photograph of his car, indicating very graphically that it was struck on its left front side between the front bumper and wheel. The witness Margolis testified that he had stopped his car at Kim-

257

ball avenue for the traffic light and started across the intersection at the same time as the plaintiffs' car when the light changed to green. However, on cross-examination he said his recollection was vague and admitted he had given the police a statement the morning after the accident in which he said he had not come to a stop. He testified that the defendant's car was going 40 miles per hour, but admitted he had told the Accident Prevention Bureau he could not determine the speed of defendant's car. Richard Brackus, another disinterested witness, testified he had stopped just to the right of plaintiffs' automobile for the red light; that both cars started up when the light changed to green; that defendant's automobile, going 35 to 40 miles per hour, shot past him and hit the Oldsmobile to his left; that plaintiff's car was traveling from 6 to 8 miles per hour. Much of Brackus' testimony is questioned by defendant's counsel, both on the basis of his estimate of speed and his estimate of distances. We think the argument made in that respect is well-founded. If Brackus' testimony is correct, no collision could have occurred. Defendant would have been across the intersection before plaintiffs' car reached the point of collision. Three women witnesses who were riding in an automobile at the time in question were produced by plaintiffs. They were surprise witnesses whose names were not on the report of the Accident Prevention Bureau, and defendant made much of the fact that plaintiffs being police officers knew it was the duty of the Accident Prevention Bureau to interview all witnesses, and if such witnesses were known to them, they should have reported that fact to the Bureau. In a large city like Chicago where witnesses to an accident can easily conceal themselves, great importance is attached to the reports of the Accident Prevention Bureau and they should, of course, be such as to put both sides on an equal foot-

ing. There were substantial contradictions in the testimony of these witnesses. Defendant made much of these contradictions and also questioned the accuracy of their observations with respect to speed and distance. He argues that it is difficult to judge the speed of a car coming directly toward one or at an angle, and the jury evidently agreed. It serves no good purpose to analyze the issues in greater detail. Enough has been said to show that there was a substantial basis for the jury's verdict.

 It is impossible to weigh testimony of this sort in the cold print of an abstract. The number of witnesses, while a factor, is not controlling. Where the issue involves a singular and isolated fact, such as the execution of a deed, the testimony of one disinterested and unimpeached witness can be controlling. On the other hand, where an accident occurs in the dead of night and in the flash of a second, with all the vague appraisements of fleeting time and space, the number of witnesses cannot weigh heavily in determining whether the verdict is against the manifest weight of the evidence. In *Silberman v. Washington Nat. Ins. Co.*, 329 Ill. App. 448, the court held that a court of review should not set aside a verdict where the evidence conflicts, even though the apparent weight of the evidence impresses the court as being in favor of the unsuccessful party. In *Schneiderman v. Interstate Transit Lines, Inc.*, 331 Ill. App. 143, it was held that the testimony of the plaintiff was sufficient to take the case to the jury, even though some of it was incoherent and was controverted by the testimony of other witnesses. The court there took into account discrepancies in the testimony of defendant's witnesses, the fact that some of them were sleepy and tired, and that it was doubtful whether they actually saw the lights and correctly knew the speed and distances about which they testified. In the instant case,

where the accident occurred at 3:00 a. m., the language of that opinion is specially pertinent. Regardless, therefore, of what we may think from an examination of the cold record in this case, the verdict of this jury must be sustained, unless there is reversible error with respect to the rulings complained of.

■ Plaintiffs complain of certain instructions. The record does not disclose at whose request the instructions were given. Plaintiffs inserted designations in the abstract showing that the instructions complained of were given by defendant. An abstract must be an abstract of the record and not contain matters supplied by the parties. The designations must be disregarded. In *Janelunas v. Chicago Fraternal Life Ass'n,* 286 Ill. App. 219, the court said that because of failure to thus show at whose request instructions were tendered, no question based on the instructions was saved. In *Horvat v. Opas,* 315 Ill. App. 229, at the bottom of page 234 the court said: ". . . the record should show at whose request the instructions were given and that those were all the instructions given or requested, . . . ." To the same effect is *Darnell v. Strand Hotel Corp.,* 343 Ill. App. 517, and *Thomas v. Mosheim,* 345 Ill. App. 184.

■ We have nevertheless examined the errors complained of. The first relates to an instruction given in the words of the statute concerning vehicular traffic stopping on a yellow or caution light. It was defendant's theory that the light changed just as he approached the crossing; that he could not stop without entering the crossing and therefore went across cautiously. We see no error in the giving of this instruction. It is true that some cases have criticized the giving of instructions in the language of the statute, but these were generally right of way cases at crossings not controlled by lights. Moreover, there are cases which have held that courts could "hardly pronounce to

260

be error the laying down of the law in the words of the law itself." *Chicago, B. & Q. Ry. Co. v. Haggerty,* 67 Ill. 113, 117; *Dukeman v. Cleveland, C. C. & St. L. R. Co.,* 237 Ill. 104, 111; *Corelis v. Chicago, B. & Q. Ry. Co.,* 244 Ill. App. 47.

The other instructions complained of, Nos. 12 and 13, concerned the imputing of the negligence of the driver Quirk to the other plaintiffs. These instructions cannot be considered, however, without also examining instruction No. 11 which told the jury that if Miller and Glas when injured were riding "in the automobile in question as passengers, then, even though it should appear that plaintiff William Quirk was guilty of some want of care that may have contributed toward the bringing about of the occurrence in question, such want of care, if any, on the part of said William Quirk cannot be imputed to said plaintiffs." That language very strongly favored the plaintiffs, because a passenger in popular parlance is any one riding with a driver. Instruction No. 12 told the jury that "in order to impute the negligence of one person to another, there must exist between them some relation of master or superior, and servant or subordinate, or other relation akin thereto, or the persons must be co-operating in a common or joint enterprise, or the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person actually negligent." Instruction No. 13 told the jury that if they found from the evidence "that the plaintiffs were engaged in a joint enterprise, the negligence, if any, of the driver, William H. Quirk in the operation of the car in which Earl L. Miller and John Glas were riding, would be imputed to the plaintiffs Earl L. Miller and John Glas." Plaintiffs contend that instruction No. 12 failed to explain to the jury the term "other relation akin thereto," and that stating the conditions under which

the negligence may be imputed in the disjunctive was error. They also contend with respect to instruction No. 13 that the jury should have been instructed as to what constituted a joint enterprise. Instruction No. 12 is based on *Johnson v. Turner,* 319 Ill. App. 265. In that case the court held that while the doctrine of imputed negligence had been generally repudiated, an exception was made where the rider and the driver of the car were engaged in a joint enterprise, citing as authority *Grubb v. Illinois Terminal Co.,* 366 Ill. 330. In that case the court held it was error to refuse an instruction that if plaintiff and the driver of the automobile were engaged in a "joint enterprise," (without further definition) plaintiff would be chargeable under the law with the negligence of the driver. In the instant case the facts warrant the conclusion that this was a joint enterprise. Both parties evidently agreed that the issue was for the jury and both submitted instructions covering it. Plaintiffs, had they so desired, could have submitted to the court an instruction defining joint enterprise.

Assuming that a definition of the phrase "joint enterprise" should have been included in the instruction, shall we say that the trial court's failure to instruct on this point was reversible error? One of the most confusing and difficult tasks a trial court encounters is the giving of an instruction in a question of this sort. Instructions are tendered by contending parties under circumstances which give no ample time for reflection and study. While the court is pondering over instructions, the jury, lawyers, bailiffs, clerks and stenographers are all cooling their heels. In the past, reversals by reviewing courts based on errors in instructions have had some curious results. Often, an attorney for one side will refuse to tender instructions on his theory of the case, preferring to have a case go to the jury uninstructed rather than take a chance on

error. The other side may tender a large number of instructions, in the hope too often encouraged by the decisions of reviewing courts, that error will creep in. Thus, the judge is put in the position of instructing a jury at length on one side only unless he, himself, should undertake the task of preparing instructions.

██ We must not look for perfection in a jury trial. In *Murphy v. New York, New Haven & H. Ry. Co.,* 171 App. Div. (N. Y.) 599, 604, the court referred to a jury trial as a ''forensic battlefield.'' It is, indeed, a place where a drama largely unrehearsed is unfolded by persons governed by innumerable rules and precedents. A reviewing court should, therefore, be hesitant to reverse a case because an instruction is not as explicit as might appear desirable when examined carefully on review. We do not believe that in this case the failure to define ''joint enterprise'' had any influence on the jury's verdict. Failure of counsel for plaintiffs to offer a defining instruction indicates that they, too, did not consider it important. The instruction had the authority of the Supreme Court in the case of *Grubb v. Illinois Terminal Co., supra,* and the trial court committed no error in giving it. What we have here said with respect to defining the phrase ''joint enterprise'' applies also to the terms used in instruction No. 12.

Plaintiffs make some point with respect to two or three rulings on evidence. The points are not well taken and do not relate to matters of significance.

██ Complaint is also made with respect to the forms of verdict submitted to the jury by the court. This question was not raised at the time nor is any error thereon preserved by the motion for new trial. It cannot properly be argued here.

We find no reversible error in the record.

*Affirmed.*

Tuohy, P. J. and Robson, J., concur.