John Kokan, a Minor by Louis Kokan, his Father and Next Friend, Appellant, v. Lawrence Costello, Appellee.

Gen. No. 45,622.

Opinion filed April 15, 1952. Released for publication May 27, 1952.

JOHN A. ZVETINA, and HENRY POLLENZ, both of Chicago, for appellant; JOHN A. ZVETINA, and SOLOMON B. ROSENZWEIG, both of Chicago, of counsel.

41

Vogel & Bunge, of Chicago, for appellee; L. H. Vogel, and R. C. Vogel, both of Chicago, of counsel.

Mr. Justice Robson delivered the opinion of the court.

Plaintiff, John Kokan, appellant, a minor of the age of ten years, sued for personal injuries resulting from his being struck by an automobile driven by defendant, Lawrence Costello, appellee. A jury returned a verdict of not guilty. Judgment was entered on the verdict and plaintiff appealed.

The case on behalf of the defendant, which the jury believed, is that he was on his way home from work and was driving south on Marshfield avenue on December 23, 1946. It was about 5:00 o'clock in the evening. The street lights were on and his car lights were burning. At the point of the accident in mid-block at 65th street and Marshfield avenue in Chicago he saw two boys riding bicycles off the west curb into the street at about a 45 degree angle. When the boys appeared they were about 20 feet in front of his car. They came from in front of a car parked at the west curb. He slowed down and let them get ahead of him and then started to accelerate. He was traveling about 15 miles an hour when he saw a third bicycle ridden by the plaintiff which also came off of the curb. He applied his brakes and swerved his car to the left. The front of the car struck the rear of the bicycle just as the car was coming to a stop. The testimony of the defendant is supported by investigations and reports made by police officers and by James Monahan in front of whose home the accident occurred. None were eyewitnesses to the occurrence but they testified to circumstances surrounding the accident that corroborated defendant's testimony.

██ The case on behalf of the plaintiff was that he and a friend, Thomas Budz, were riding their bi-

cycles in a southerly direction on the east side of Marshfield avenue and that another friend, Roy Gustafson, was riding in the same direction on the west side of the street. They, Budz and Gustafson, preceded the plaintiff by about 10 feet. The defendant was driving his car at about 20 miles per hour and swerved to the left side of the street and struck the plaintiff's bicycle. No warning or horn was sounded by the defendant. Plaintiff denied that he and the other boys had come off the curb in front of the car that was parked at the scene of the accident. This was the issue of fact presented to the jury. The jury, who were the judges of the credibility of the witnesses, gave credence to the evidence of the defendant rather than that of the plaintiff. The trial judge, who heard and saw the witnesses, approved the verdict by his denial of plaintiff's motion for a new trial. When the testimony is contradictory, this court will not substitute its judgment for that of the trial court unless the findings are manifestly against the weight of the evidence. *Wynekoop v. Wynekoop,* 407 Ill. 219. We must conclude that the verdict was not against the manifest weight of the evidence.

██ Defendant was called by plaintiff for cross-examination under section 60 of the Civil Practice Act and was not called for later examination by his own attorney in the presentation of the defense. Plaintiff contends that because of the failure of defendant's counsel to call him as a witness the testimony of the defendant has no probative value. We do not understand this argument. It is immaterial when and under what circumstances a witness may testify. The important question is, what was his testimony. Whether or not a party is called for adverse examination or is produced upon his own behalf makes no difference. His evidence as such becomes a part of the record and must be considered by the jury.

In this simple case plaintiff gave six instructions and defendant gave seventeen instructions to the jury. Included as one of defendant's instructions was the following.

"If a person without fault on his part, is confronted with sudden danger or apparent sudden danger, the obligation resting upon him to exercise ordinary care for his own safety does not require him to act with the same deliberation and foresight which might be required under ordinary circumstances."

Plaintiff contends that the giving of this instruction was erroneous and diverted the jury from the real issues of the case. While it is evident that it is applicable to plaintiff and not defendant, we are at a loss to see how it was prejudicial to plaintiff's case. It gives him the benefit of the "sudden danger" rule. We can see no error in defendant gratuitously giving an instruction for the benefit of plaintiff. This is, however, an example of the difficulties involved in the submission of a large number of instructions. As this court said in the case of *Miller v. Green*, 345 Ill. App. 255:

"One of the most confusing and difficult tasks a trial court encounters is the giving of an instruction in a question of this sort. Instructions are tendered by contending parties under circumstances which give no ample time for reflection and study. While the court is pondering over instructions, the jury, lawyers, bailiffs, clerks and stenographers are all cooling their heels. In the past, reversals by reviewing courts based on errors in instructions have had some curious results. Often, an attorney for one side will refuse to tender instructions on his theory of the case, preferring to have a case go to the jury uninstructed rather than take a chance on error. The other side may tender a large number of instructions, in the

44

hope too often encouraged by the decisions of reviewing courts, that error will creep in. Thus, the judge is put in the position of instructing a jury at length on one side only unless he, himself, should undertake the task of preparing instructions.''

██ Numerous instructions serve to confuse rather than instruct a jury. It would better serve the ends of justice if the bench and bar would co-operate in simplifying and limiting the instructions to be given in a case.

We find no reversible error. The trial court is affirmed.

*Judgment affirmed.*

SCHWARTZ, J., concurs.
TUOHY, P. J., took no part.